MAXINE (ZOLNOSKY) MASON, appellant, v. ROBERT ZOLNOSKY, appellee.

No. 49977.

(Reported in 103 N.W.2d 752)

984

June 14, 1960.

Burnquist, Helsell, Burnquist & Kersten, of Fort Dodge, and John H. Cantrell, of Oklahoma City, Oklahoma, for appellant.

Lund, Lund & Wood, of Webster City, for appellee.

Thompson, J.—The plaintiff's application for modification of a decree of divorce was, in effect, an attempt to induce the court to hold that the decree previously entered was improvident and unwise as to its provisions for custody and support

of the minor son of the parties. Plaintiff and defendant were married on August 29, 1945, and lived together as husband and wife until July 30, 1952. One child, a son, Ronald Zolnosky, was born to them. In 1952 he was five years of age. Marital difficulties resulted in a divorce action, and the plaintiff was granted a decree of divorce on October 6, 1952, in Hamilton County, where the parties had made their home in Webster City. A stipulation as to property rights and the custody and support of Ronald was entered into. This stipulation was approved by the court and made a part of its decree. It was provided that plaintiff should have the sole custody of Ronald, with defendant having the right to visit the child at reasonable times; and that Ronald should be kept and maintained in the State of Iowa except for such times as plaintiff might take him for visits in other localities for periods not to exceed three weeks. The defendant was required to pay $50 per month for the support of the child.

Trouble over the visitation rights soon developed, and on April 28, 1953, the defendant filed an application to have such rights defined. He alleged he had been denied the right to see his son since January 18, 1953, and that the plaintiff had at all times made it practically impossible for him to see or visit his son. Plaintiff resisted the application, admitting the refusal of visitation since January 18, 1953; and alleged defendant had made said visits the occasion for attempts to pressure the child into interceding with plaintiff to remarry defendant, which efforts caused a state of high nervous tension in Ronald. She asked that the decree be modified to deny defendant all visitation rights until Ronald reached the age of 14 years.

After hearing, the court found that plaintiff had violated the provisions of the original decree by refusing defendant the visitation rights granted him therein; there had been no change in circumstances warranting any change in these provisions, and that it was for the best interest and welfare of Ronald that the visits be continued. The court then proceeded to specify in detail the times and conditions of the visits. Plaintiff's application for modification was denied.

The next custodial battle between the parties developed through an application for modification of the decree filed by the plaintiff on November 23, 1956. She had at this time married one Charles Mason, who had been divorced from a previous wife in October 1956. The application alleged the plaintiff and her husband would reside in Oklahoma City, Oklahoma, and prayed the decree be modified to permit her to take Ronald there to make his home with them. The defendant resisted, and another stipulation resulted, which was likewise approved by the court and made a part of the decree on November 29, 1956. All previous orders concerning custody were set aside, but custody remained in the plaintiff and she was given the right to take the child to her home in Oklahoma City. It was provided, however, that she should return him to the home of his maternal grandparents in Webster City not later than one week after the end of the school year in June; he should remain in this home—where he had spent considerable time after his parents' divorce and before his mother's remarriage—until the third week in July, when he should live with defendant until one week before the commencement of school in Oklahoma City. The defendant has not remarried, but lives with his parents in Webster City, apparently on the same street and near the home of plaintiff's parents. Defendant was given unlimited visitation rights while the boy was with plaintiff's parents in Webster City, including the right to have him for overnight visits or fishing trips. Each party was given reasonable visitation rights while the child was with the other. Defendant was relieved of further support of the child, and the plaintiff was required to file a bond in the sum of $1000 to insure the return of Ronald to Iowa at the end of each school year.

Neither party now complains that this decree of the court has not been complied with. But plaintiff seeks to modify it. She alleges that she signed the stipulation which the decree of November 29, 1956, approved and adopted, under duress, the duress being her concern about moving to her husband's home in Oklahoma City and taking the child with her. She says the decree is not for the best interest and welfare of the child, experience having shown that compelling him to spend three

months of each year in Webster City is detrimental to his general health and welfare; that the requirement for a bond to insure return of Ronald each summer is unconscionable; that the defendant is financially able to visit Ronald in Oklahoma City and to contribute to his support, and should be required to furnish such support. She asks that the existing decree be again modified to conform to the prayer of her application in the respects outlined. The trial court denied the application.

I. The plaintiff states four propositions relied upon for reversal of the judgment of the trial court. The first and fourth are closely related. They rest upon the familiar principle that the best interest of the child should be the primary concern of the courts in determining custodial matters. The second proposition asserts the court failed to consider the duress under which the plaintiff signed the stipulation which it approved and made a part of its decree, and did not fully appreciate the effect of the modification of 1956 upon the child. The third allegation of error is thus stated: "The order appealed from rests upon an illegal and inequitable foundation." By reference to plaintiff's argument on this point, we find the basis for the complaint is that the court by approving the stipulation and making it a part of its decree deprived the minor of the right of support from his father, which it is asserted is against public policy. We shall take up the four propositions in order, except that one and four will be considered together in Division II immediately following.

II. The plaintiff rests her case largely upon the asserted proposition that the best interest and welfare of the child is the primary consideration for the court in its determination of the particular issues existing here. Her approach to the case is stated in her brief thus:

"The only question involved here is the question of whether it is for the best interests and welfare of this boy to prearrange one fourth of his life each year, to take him out of this well-regulated, happy home to two different homes where he will unquestionably be exposed to different principles, methods and

ideas of training and discipline than what he has experienced during the rest of the year. As he is subjected to a different mode of living, in each case the different attitudes, tensions, and relationships of those about him for periods in excess of a month cannot help but have an adverse effect on the boy, from which it takes some time to recover normalcy."

This statement fairly expresses the plaintiff's contentions in regard to the interest and welfare of the boy. Her evidence is that Ronald becomes somewhat disturbed as the time to come to Iowa for the summer approaches; he is taken away from his friends, his pets, his opportunities to go to summer camp and to play Little League baseball. His grades are not as good in the spring and fall as they are in the middle of the school year.

█ █ It needs no citation of authority for the proposition that a divided custody is to be avoided if reasonably possible. But often there is no alternative unless the child is to be cut off entirely from one parent; and this, also, is not usually for his best interest. The problem of how to arrange for the children of divided homes is one for which there is no real solution. The courts do the best they can as it appears to them; and, since the trial court has the parties before it and is in a better position to evaluate their demeanors and motives, we give considerable but not controlling weight to its findings.

We shall not go further into the question of the best interest of the child here. The fact that Ronald would be faced with some change in his living habits, disciplines and people surrounding him must have been apparent to the able trial court when it made its decree of 1956. We must assume the court weighed these matters at that time, and decided it would be for the best interest of Ronald to have some acquaintanceship and companionship with his father. We agree that the wants or rights of the parents weigh little when measured against the welfare of the child; but the need of this small son to know and have the affection and companionship of his father does not so readily yield. It is the plaintiff's desire and intention, if permitted, to cut off all contact between Ronald and his

natural father; she so testified. It is an attitude which has little appeal to a court of equity.

Plaintiff's contention concerning the welfare of the child is, in effect, an attempt to demonstrate that the decree of 1956 was unsound and improvident, was not for the best interest of Ronald and should now be set aside. She seeks to retry the validity of the order which the court then made, approving and adopting the stipulation which plaintiff, in her eagerness to join her new husband, agreed to. No appeal was taken from that judgment; but plaintiff, having received the benefits of it, now seeks to rid herself of the burdens.

Her argument omits consideration of one vital factor; perhaps on the theory that if it is ignored it will go away. This is the rule that judgments in divorce matters concerning custody and support of children will be modified only if there has been a change in circumstances since the original decree was entered. True, the welfare of the child is of greatest importance; but when this has once been decided, and a custodial order made, it will not be overturned unless a material change in circumstances has occurred. Any other procedure would leave the matter open to the most undesirable result of endless litigation and continual uncertainty. We have repeatedly applied the rule in these cases; and we have said the burden to show a change in circumstances rests upon the applicant. Thein v. Squires, 250 Iowa 1149, 1156, 97 N.W.2d 156, 161; Staggs v. Staggs, 250 Iowa 938, 945, 96 N.W.2d 736, 741; Blundi v. Blundi, 243 Iowa 1219, 1226, 55 N.W.2d 239, 243; Beyerink v. Beyerink, 240 Iowa 45, 48, 35 N.W.2d 458, 460, where we said:

"The power of the trial court or of this court under said Code section 598.14 should be exercised only when there is a material and substantial change of condition or circumstance respecting one or both parties since the entry of the original decree, rendering a modification therein expedient. The original decree is a binding finality upon both parties with regard to their then existing circumstances." Numerous authorities are cited. See also Bennett v. Bennett, 200 Iowa 415, 417, 203 N.W. 26, 27.

990

■ We have pointed out above that it must have been in the contemplation of the parties to the stipulation and the court which approved it that the boy would make friends and engage in activities in his new home which would inevitably be somewhat disrupted by his return to Iowa for the summer. The homes of the grandparents are concededly modern and suitable. The grandparents are now a few years older; another circumstance which the court must have considered. There is no material change in circumstances since the decree of 1956, and we accept it, as did the trial court, as a finality until such a change is shown.

III. Plaintiff's second proposition relied upon for reversal is that she signed the stipulation under duress, and neither the parties nor the court fully appreciated the effect of the approving decree upon the best interests of the child. Her evidence showed no duress except that her then attorney advised her it was doubtful whether the court would modify the existing terms of the decree which forbid her to take Ronald out of the state permanently. Her contention seems to analyze into the thought that, faced with a choice whether she would go to Oklahoma City to live with her new husband and leave Ronald behind, or whether she would stay in Webster City with Ronald, or would agree to what she now thinks was an unwise contract, she chose the third alternative. But we are not here concerned with the stipulation; it is the decree of the court that faces the plaintiff. It is a finality unless she can show changed conditions or circumstances; we are not about to retry the issues determined by the modifying order of November 29, 1956. The trial court in its findings spoke of "the persistent requests, demands and obstructive tactics" of the plaintiff; and further said:

"The Court can reach only one conclusion about these repeated proceedings and that is, the plaintiff has sought by steadily attacking the Decree and conceding some things such as cancellation of the support allowances to gain an advantage in removing the boy from the State and in making repeated charges against the defendant unsupported by any testimony,

but which is refuted by the circumstances shown by the evidence, to eventually terminate the rights of visitation on the part of the defendant."

We are constrained to agree with these conclusions.

IV. Plaintiff further asserts error in the elimination of the requirement for support of Ronald by the defendant. Pappas v. Pappas, 247 Iowa 638, 640–643 inc., 75 N.W.2d 264, 266, 267, 57 A. L. R.2d 1134, 1138, decides this question adversely to plaintiff's contention. She attempts to distinguish the Pappas case by saying it concerned only the elimination of payments already accrued. But the holding is broader than that. We said, on page 643 of 247 Iowa, page 267 of 75 N.W.2d, page 1138 of 57 A. L. R.2d, that an agreement between the divorced father and mother, for a valid consideration, by which the mother agreed to release the father from the duty to support a minor child was binding upon the mother. If it should be made to appear the mother is unable to support the child adequately, the father might then be required to contribute. But no such showing appears here. The stepfather is earning $15,000 per year. He stands in loco parentis to the child, and so is bound to support him so long as he remains in his home. Gerdes v. Weiser, 54 Iowa 591, 593, 7 N.W. 42, 43, 37 Am. Rep. 229; Minor Heirs of Bradford v. Bodfish, 39 Iowa 681, 684; 39 Am. Jur., Parent and Child, section 62, pages 699, 700; 67 C. J. S., Parent and Child, section 73b, page 806.

The whole contention may be shortly dismissed by the statement that the elimination of the requirement for support payments was done in this case, not by contract but by the decree of the court. No appeal has been taken and no change in circumstances shown. It is again an attempt to relitigate an issue settled by the decree of November 29, 1956.

Plaintiff also complains of the requirement that she furnish bond to insure her return of Ronald to Webster City each summer. Again, this is a matter settled by the decree of 1956. Nor do we find anything unreasonable or unconscionable about it; indeed, in view of the express aim of the plaintiff

to terminate all contact between the defendant and his son, the requirement of the bond seems a peculiarly salutary one.

The matter was correctly ruled by the trial court.—Affirmed.

All JUSTICES concur except OLIVER, J., not sitting.