ALYCE I. HUSTON, appellee, v. JAMES S. HUSTON, appellant.

No. 50794.

(Reported in 122 N.W.2d 892)

544

July 16, 1963.

Rehearing Denied September 17, 1963.

Bump, Jordan & Holmes, of Des Moines, for appellant.

Duffield, Pinegar & Tapscott, of Des Moines, for appellee.

GARFIELD, C. J.—This is a controversy between divorced parents of Dennis James Huston, born October 16, 1950, over his custody. Trial was had June 27, 1962. Subsequent to about January 2, 1957, Dennis lived with defendant-father except that plaintiff-mother had the right to have him from Saturday noon until 8 p.m. Sunday of each weekend and for two weeks between June 1 and September 1 of each year. She also had the right to visit the child at all reasonable times and places. A supplemental decree, agreed to by the parties, dated April 12, 1957, contained these provisions.

The immediate cause of the present controversy was apparently defendant's refusal to let plaintiff take the child to her home Saturday, April 7, 1962. An altercation then occurred between plaintiff, on the one hand, defendant and his present wife, Beverly. The following day plaintiff caused defendant's arrest on a charge of assault and battery filed by her. Trial on this charge was had in the Des Moines municipal court April 13 and defendant was found not guilty. April 16 on plaintiff's application defendant was cited for contempt in district court because of his alleged willful refusal to let her have actual custody of the boy the past two weekends. The same day plaintiff filed application to modify the decree of April 12, 1957, by granting her actual custody of the boy, with limited rights of visitation to defendant.

April 25, 1962, defendant filed resistance to plaintiff's applications together with his own application to modify the 1957 decree by granting him full custody of Dennis, subject to vacation and visitation rights in plaintiff.

The citation for contempt and the opposing applications to modify the 1957 decree were heard June 27, 1962, on the same evidence. At the conclusion of the evidence and filing the court reporter's shorthand notes the court found defendant guilty of contempt for willful violation of the 1957 decree by refusing to permit plaintiff to have actual custody of Dennis on April 7. Defendant was sentenced to ten days in the county jail. We granted certiorari to review this order to punish for contempt (see section 665.11, Code, 1962).

June 28 the court set aside the decree of April 12, 1957, and awarded plaintiff sole custody of Dennis; provided, however, for a trial period defendant was allowed to have the child visit him on the first and third Sundays of each month between 8 a.m. and 6 p.m. through September 1962, after which plaintiff, defendant, and the Des Moines Child Guidance Center must report as to advisability of continuing this right of visitation, based solely on the child's welfare. Defendant appealed from the decree of June 28. The certiorari action and the appeal have been consolidated here.

Plaintiff and defendant were married March 11, 1950. Dennis is the only child of the marriage. Plaintiff was granted a divorce September 22, 1952, on the familiar cause of such inhuman treatment as to endanger her life (Code section 598.8, subsection 5). The decree granted plaintiff sole custody of Dennis, then less than two years old, subject to the defendant's reasonable right of visitation. It also provided that after Dennis was five he should be permitted to visit defendant at all reasonable times and for 20 days during the summer. Defendant was ordered to pay $30 a month child support.

In December 1952 plaintiff married Delbert Cockayne. The marriage lasted six weeks. She was granted a divorce. Plaintiff married her present husband, James Kinney, December 21, 1957. He has two boys, 14 and 10, by a prior marriage and must pay $100 a month for their support. Plaintiff and Mr. Kinney have a boy, Timothy, born in October 1958. Defendant married Beverly, his present wife, May 19, 1956. They have two little girls, five years and 14 months of age at the time of trial. It is to be noticed plaintiff's present marriage was after the decree of April 12, 1957, defendant's was prior thereto.

I. We consider now the certiorari action to review the order to punish for contempt.

The decree of April 12, 1957, provides "the legal custody" of Dennis be retained by plaintiff but he shall reside in the home of defendant who shall have the right to Dennis' actual custody Monday to Saturday noon of each week and plaintiff shall have the right to have the child with her, in her legal and actual custody, from noon Saturday until 8 p.m. Sunday each weekend.

Significance of the provision for legal custody by plaintiff is not apparent. It would seem the boy's actual custody is the important matter.

About two weeks before April 7 Dennis complained of a stomach ache. Defendant's wife called a doctor for the boy. Medicine and rest in bed at home did not relieve the condition. Thursday, March 29, on the doctor's advice Dennis was taken to a hospital where he remained until about 10 a.m., Saturday, April 7. Defendant and Beverly then took the boy to their home. He was emotionally upset. The doctor recommended he be kept quiet, away from excitement or anything that would upset him, so he could return to school Monday.

Plaintiff knew of the boy's illness and visited him in the hospital. Shortly before noon April 7 she phoned defendant she would be right over to get Dennis. Defendant told her they had to keep him home that weekend to get him prepared for school Monday as the doctor wanted him in school then. Beverly was then caring for plaintiff's younger boy "Timmy", as she frequently did.

Ten or 15 minutes after the phone conversation plaintiff went to defendant's home and told Beverly she had come for her two boys. Beverly asked plaintiff to sit down so they could talk about her taking Dennis without exciting everyone. Plaintiff said she was in no mood to converse and shouted angrily at Beverly. Just what happened in the altercation that followed is in dispute. Beverly insists plaintiff pulled her hair but plaintiff denies this. She says defendant struck her and knocked her down but defendant and Beverly deny it. Plaintiff asked or threatened to have the police called. Dennis and Timmy were both weeping and Dennis was upset. Defendant and Beverly say plaintiff used much loud profanity. Plaintiff does not deny this and admits there was bitter conversation.

As stated, plaintiff caused defendant's arrest for assault and battery. When he was found not guilty plaintiff warned him she would get him for contempt of court. The citation for contempt was filed three days later.

One thing is clear. The physician's recommendation Dennis be kept quiet and away from anything that would upset him upon his release from the hospital was not to be realized.

548

Section 598.14, Codes 1958, 1962, provides that when a divorce is decreed the court may make such order in relation to the children and other named matters as shall be right. "Subsequent changes may be made by it in these respects when circumstances render them expedient."

Section 598.15 states: "Contempt. If any party against whom such decree has been entered, shall willfully disobey the same * * * he may be cited and punished * * * for contempt * * *."

■ Plaintiff's citation for contempt charges defendant with willful violation of the 1957 decree by refusing to permit her to have Dennis the past two weekends. As stated, the trial court found defendant guilty of such willful violation on April 7. (Plaintiff got Dennis without trouble the following weekend.) Plaintiff argues here, and defendant denies, he willfully disobeyed the 1957 decree within the meaning of section 598.15, supra, by refusing to let plaintiff have the boy on April 7. We think defendant should not be held in contempt under 598.15 unless his disobedience to the decree was willful.

We recently considered at some length the meaning of "willfully" in section 658.4 providing for treble damages for willfully injuring any tree on land of another. Cozad v. Strack, 254 Iowa 734, 740–743, 119 N.W.2d 266, 270–272. It is there pointed out Nelson v. Deering Implement Co., 241 Iowa 1248, 1256, 1257, 42 N.W.2d 522, 527, concluded "willfully" as used in section 562.2 authorizing recovery of double the rental value from a tenant willfully holding over after the term of his lease, means "intentionally, deliberately, with bad or evil purpose, contrary to known duty."

The Cozad opinion also observes Parker v. Parker, 102 Iowa 500, 505, 506, 71 N.W. 421, 422, defined "willful" as used in a criminal statute against willful trespass as not only "intentionally or deliberately done, but with a bad or evil purpose, as in violation of law, or wantonly and in disregard of the rights of others, or knowingly and of stubborn purpose, or contrary to a known duty, or without authority, and careless whether he have the right or not."

■■ These definitions of willfully appear to have appli-

cation here. Contempt proceedings are quasi-criminal and are commonly treated as criminal in nature even when they arise in civil actions. Phillips v. District Court, 252 Iowa 140, 145, 106 N.W.2d 68, 70, and citations; Brody v. District Court, 250 Iowa 1217, 1221, 1223, 98 N.W.2d 726, 729, 731, and citations. While proof of the act constituting the contempt need not be beyond a reasonable doubt, clear and satisfactory proof is required. Watson v. Charlton, 243 Iowa 80, 92, 50 N.W.2d 605, 612, and citations; Brody v. District Court, supra.

We have held in several certiorari actions questioning a judgment of contempt that we will review the evidence for the purpose of determining whether proof of the contempt is clear and satisfactory. The cause is not triable de novo here but the judgment does not have the full force and effect of a jury verdict. While we give weight to the trial court's findings we are not bound by them. Citations last above and precedents therein cited; Critelli v. Tidrick, 244 Iowa 462, 472, 56 N.W.2d 159, 165, and citations; Mason v. District Court, 209 Iowa 774, 776, 777, 229 N.W. 168, and citations.

"It is for this court to say, having due regard for the findings below, whether the contempt has been clearly and satisfactorily shown" (citations). Harding v. McCullough, 236 Iowa 556, 558, 19 N.W.2d 613, 615.

We are unable to find clear and satisfactory evidence to support the trial court's finding defendant willfully violated the 1957 decree on April 7, 1962. We think it is more reasonable to find defendant—and his wife Beverly too—acted in a good faith effort to carry out the physician's recommendation Dennis be kept quiet and away from anything that would upset him. There appears to be substantial basis for an honest belief this recommendation could better be carried out by the boy's staying home that weekend.

Further, as in Phillips v. District Court, supra, 252 Iowa 140, 143, 106 N.W.2d 68, 69, the contempt matter "has some unappealing overtones of vindictiveness."

The writ of certiorari is sustained and the order to punish for contempt is annulled.

II. In considering defendant's appeal from the decree of

June 28, 1962, awarding sole custody of Dennis to plaintiff, we observe these propositions are so well established that authorities need not be cited to support them—especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but are not bound by them. In child-custody cases the first and governing consideration of courts must be the best interest of the child (rule 344(f) 7, 15, Rules of Civil Procedure).

We are aware some of our decisions say the trial court's findings are entitled to much weight. This, however, seems too strong in view of our duty to review the case de novo. Andreesen v. Andreesen, 252 Iowa 1152, 1156, 110 N.W.2d 275, 277; McKay v. McKay, 253 Iowa 1047, 1052, 115 N.W.2d 151, 153. See also Willey v. Willey, 253 Iowa 1294, 1297, 115 N.W.2d 833, 835; White v. White, 251 Iowa 440, 443, 444, 101 N.W.2d 18, 20, 21, and citations.

As stated, the original divorce decree entered in September 1952 granted plaintiff sole custody of Dennis, then less than two years old, subject to defendant's reasonable right of visitation. It would be unusual for custody of a child of such tender age to be awarded to one other than its mother. However, the child actually has lived with plaintiff very little except for weekends. Plaintiff has worked five and one-half days a week as a dental assistant much of the time since Dennis was born. Her mother took care of the boy until he was four. Upon the mother's death defendant's mother and father took Dennis, with plaintiff's consent, until about the time defendant and Beverly were married in May 1956. The award of custody to the elder Hustons was by the juvenile court. When defendant married Beverly, plaintiff agreed Dennis should live with them except for weekends with her.

We have already referred to the terms of the decree of April 12, 1957, providing that the agreement regarding the boy's actual custody should be continued. The decree recites: "under the circumstances that exist at this time, it would be in the best interests of said child that the aforesaid arrangement be continued * * *." This decree remained in effect until June 28, 1962, date of the decree from which the present appeal is taken.

As previously stated, plaintiff (age 30 at time of trial) married for the third time in December 1957 and Timmy was born in October 1958. We are told that following this marriage plaintiff had a home suitable for Dennis. There is evidence Mr. Kinney has a third interest in a furnished duplex free of incumbrance, aside from their home. Yet, so far as shown, plaintiff made no effort to obtain Dennis' actual custody except during weekends until after the altercation of April 7, 1962, and defendant's acquittal on the criminal charge filed by her.

We mention these and other matters not with any thought plaintiff should be punished by not having Dennis' actual custody, or that defendant should be awarded by having it, but because we think they bear on which parent is better suited to have his custody and what is for his best interests.

After Timmy's birth plaintiff continued her work as a dental assistant. For some time prior to April 7, 1962, Timmy was sent to a nursery and Beverly cared for the child Saturdays. Plaintiff was still employed in her work at time of trial but testifies if she could have Dennis through the week, not just weekends, she would discontinue it the last of August and devote full time to her children. The fact remains that up to time of trial plaintiff devoted comparatively little of her time to either of her children, especially Dennis.

In defendant's home Dennis had a new room of his own, built just for him, which he appreciated and enjoyed. When Dennis slept at plaintiff's Saturday nights he shared a room, but not a bed, with Timmy. Defendant's home has an enclosed backyard for play. The school Dennis attended is about two blocks away. Defendant or Beverly helped the boy with his schoolwork, especially arithmetic, and his grades improved.

Except when his work interferes, defendant takes his family to church Sundays. Since plaintiff had Dennis Sundays the boy could not accompany defendant and his family to church. Plaintiff, defendant and their spouses are all of the Catholic faith. Plaintiff attends church—not the one defendant does—about once a month. On other Sundays she sent Dennis by himself. However, this was not until defendant complained the boy was not getting his religious training. Mr. Kinney had not attended church with Dennis since the first of the year.

There is undisputed evidence Dennis and the little girls born to Beverly and defendant get along well together and Dennis is not jealous of them. There is testimony, however, Dennis is jealous of Timmy and feels he must compete with the younger child for their mother's affection when in her home. Dennis has become attached to Beverly (27 at time of trial) and confides in her. We are favorably impressed with her, as plaintiff evidently was when she frequently placed Timmy in Beverly's care. Dennis calls plaintiff's home "Mom's", defendant's, "home." There is quite a little testimony the boy minds defendant and Beverly well.

There is also undisputed evidence plaintiff showered Dennis with gifts. Each weekend he received something new including such expensive gifts as a bicycle and wristwatch which he wore but once. This is from the cross-examination of plaintiff:

"Q. What do you do, shower him with gifts? A. I might.

"Q. Do you buy his attention that way? A. Sometimes."

Beverly testifies that when Dennis returned from spending the weekend of May 19, 1962, with plaintiff he was rather upset because plaintiff told him she wanted him to come and live with her since they had more money and could buy more things than his father and Beverly could. "Denny volunteered this to me. He said she * * * wanted him to have anything he wanted. Then she proceeded to tell Dennis she knew something real bad about his father, and then she left him hanging."

.We find no denial of the foregoing testimony although plaintiff says she did not talk to Dennis about "this proceeding" and made it a point to tell him he should love his father. It is evident such treatment of the boy by plaintiff tended to upset him. There is no evidence defendant or Beverly tried to prejudice Dennis against his mother or spoke to him disparagingly of her.

We have referred to the fact the boy was emotionally upset in April 1962. Plaintiff testifies he has had an emotional problem most of his life. The underlying cause of this appears to be the divided custody provided by the 1957 decree and by agreement prior thereto. Living with the Hustons five and one-half days and the Kinneys the rest of each week tends to induce a

feeling in Dennis he does not belong to either family. The situation is added proof divided custody of a child is usually unwise.

As York v. York, 246 Iowa 132, 138, 139, 67 N.W.2d 28, 32, observes, "Often * * * we have held that to allow the children to live part of the time in one household and part * * * in another is not to the best interest of the children" (citations).

The York opinion approves this from Bennett v. Bennett, 200 Iowa 415, 418, 203 N.W. 26, 27, which we think applies here: "Experience has shown that allowing the child to live a part of the time in one household and a part of the time in another, is not only not to the best interest and welfare of the child, but in many instances it is wholly destructive of discipline. It also shows that the party who has the child for a short time, in some instances, sows seeds of discontent, inculcates in the child a spirit of dissatisfaction and rebellion against authority, and devotes the whole time that the child is with that person in trying to wean the child away from the other party in whose custody it is placed by the decree; * * *."

Mason v. Zolnosky, 251 Iowa 983, 988, 103 N.W.2d 752, 755, states, "It needs no citation of authority for the proposition that a divided custody is to be avoided if reasonably possible."

Both plaintiff and defendant testify the provision of the 1957 decree for divided custody is not in the best interests of the boy. This is also, in effect, the finding of the Des Moines Child Guidance Center after its staff saw Dennis at the request of a Des Moines judge. They recommended less division of parental responsibility and giving and taking custody and that the boy needs to feel he belongs to a family.

After giving weight to the trial court's findings, we are unable to agree plaintiff and her present husband are better suited to have Dennis' custody than are defendant and his present wife or that an affirmance will serve the boy's best interests. While, of course, Beverly is not his mother, she has cared for Dennis longer than plaintiff and has deep affection for him and he for her. We think defendant has been and will continue to be much more attentive to Dennis, his only son, than Mr. Kinney who has three other sons.

We realize defendant's record is not immaculate. He has

done some fighting, some drinking to excess, and had some trouble in the army. He explains this trouble by plaintiff's harassment of him over child-support payments. In any event, except for one incident the time of which is not clear, all this conduct occurred a considerable time prior to the 1957 decree and was then fully known. That decree necessarily determined defendant's fitness at that time to have Dennis five and one-half days a week. We are not about to retry what was then determined. Mason v. Zolnosky, supra, 251 Iowa 983, 989, 990, 103 N.W.2d 752, 755, 756, and citations.

We observe, too, there is undenied testimony, relating to a time subsequent to the 1957 decree, which reflects unfavorably on plaintiff's character. Obviously, this matter could not have been considered in the rendition of the 1957 decree. However, no purpose would be served by reciting the testimony referred to.

The evidence does not indicate Dennis' emotional disturbance has been caused by conduct of defendant—or Beverly— since the boy was placed in their care five and one-half days a week. We have already said the apparent underlying cause is the division of custody between the natural parents. However, we must conclude plaintiff, perhaps without intending to do so, has sowed seeds of doubt and discontent in the boy by conduct to which we have referred. We think, too, her conduct on April 7, 1962, was not for the boy's best interest and upset him greatly.

Plaintiff reminds us of the rule that, save in exceptional cases, the mother is best fitted to care for children of tender years and ordinarily they will be placed in her custody. Maron v. Maron, 238 Iowa 587, 591, 592, 28 N.W.2d 17, 18, and citations; Stillmunkes v. Stillmunkes, 245 Iowa 1082, 1086, 65 N.W.2d 366, 369; Patzner v. Patzner, 250 Iowa 155, 162, 163, 93 N. W.2d 55, 59.

Whether a boy of Dennis' age at time of trial is of tender years need not be considered. The presumption, if it is such, in favor of this mother is not now entitled to the weight it should— and presumably did—have in arriving at the terms of the original divorce decree or the 1957 one. Incidentally, at the time of the 1957 decree Dennis was more than five years younger than at the time of trial in 1962. As previously explained, the 1957

decree adjudicates defendant should have the boy five and one-half days a week. See in this connection Maron v. Maron, supra; Dow v. Dow, 240 Iowa 145, 152, 35 N.W.2d 853, 857. See also Jensen v. Jensen, 237 Iowa 1323, 1330, 1331, 25 N.W.2d 316, 320, and citations; Blundi v. Blundi, 243 Iowa 1219, 1225, 1226, 55 N.W.2d 239, 243.

■ "In a hearing for a change of custody from the father to the mother we do not indulge in any presumption or inference that a child would be better off in the custody of its mother." Dow v. Dow, supra.

■ Further, there is no hard-and-fast rule as to which parent or other person should be awarded a child's custody. Each case must be judged on its own facts. Any presumption in favor of a mother of a young child is resorted to merely to aid the court in a particular case to determine what is for the child's best interests. No one should be awarded a child's custody where its welfare will be served by placing it with another. Maron v. Maron, supra, 238 Iowa 587, 592, 28 N.W.2d 17, 19, 20, and citations; Andreesen v. Andreesen, supra, 252 Iowa 1152, 1156, 1157, 110 N.W.2d 275, 277, 278. See also Stillmunkes v. Stillmunkes, supra, 245 Iowa 1082, 1086, 65 N.W.2d 366, 369; Harwell v. Harwell, 253 Iowa 413, 418, 112 N.W.2d 868, 872.

■ We have not overlooked the rule repeatedly applied by us that a decree in a divorce matter fixing the custody of a child is final as to circumstances then existing. It can be modified only if subsequent conditions have so changed that the child's welfare demands or at least makes expedient such modification. The 1957 decree is of course such a decree.

■ Upon the point just referred to the case is much like Maron v. Maron, supra. There the parties agreed it was not for the best interests of the children to divide their custody between the parents and that such a provision of the former decree should be changed to give one parent entire custody subject to the right of visitation in the other. The vital question was which parent should, for the best interests of the children, have such custody. Except that custody of one child is involved here, the same situation exists. Effect of the Maron decision is that where such a concession is made, the showing of changed conditions,

since the former decree, need not be so strong as otherwise—the child's welfare is the controlling consideration. Of course it is a lesser change in this 1957 decree to award actual custody for seven days to defendant than to plaintiff.

Somewhat analogous to Maron v. Maron, supra, is Scheffers v. Scheffers, 242 Iowa 563, 566, 47 N.W.2d 157, 158, 159, where on appeal from an order changing the custodial provisions of a divorce decree we considered evidence at the original trial where both parties joined in offering it at the hearing on the requested change. The opinion recognizes that upon such a hearing little if any consideration is usually given testimony at the original trial. "Such a hearing should not be a retrial of the original divorce action." (Citation)

Especially in view of the agreement the divided custody provision of the 1957 decree is not for Dennis' best interests, we think there are such changed conditions as warrant the modification we make. In April 1957 defendant and Beverly were living in a two-room apartment with a baby. They have since acquired their present home two blocks from school, added the new room just for Dennis, other improvements to it, and enclosed the yard for play. Defendant's earnings have increased from about $350 a month to more than $450. He is assistant operator of the Des Moines sewage treatment plant with civil service status. Then there is the important fact that between the entry of the 1957 decree and the trial in 1962 the boy lived with his father and stepmother, except weekends, more than five years and two months during which mutual ties of affection strengthened. That these are material changes see Nichols v. Nichols, 239 Iowa 1173, 1178, 34 N.W.2d 187, 190.

III. Although divided custody has proven not for the boy's best interests, we are not disposed to deny plaintiff the right to visit the child. We have no doubt she has a mother's love for him. We think it would be a mistake, however, to permit such visits as often as once each week. We hope it is not a mistake to permit plaintiff to have the boy with her the first and third Sundays of each month from 8 a.m. to 6 p.m., or anytime between such hours she may desire to have him. We allow such

right of visitation and express the hope each parent will make every effort not to prejudice the boy against the other.

The writ of certiorari is sustained, the order to punish for contempt is annulled, the decree of June 28, 1962, is reversed and the cause remanded for decree as herein provided.

All JUSTICES concur.