Lois WELCH, respondent-appellant, v. GLENN WELCH, applicant-appellee.

No. 51330.

(Reported in 129 N.W.2d 642)

July 16, 1964.

Life, Davis & Life, of Oskaloosa, for appellant.

Jones & Reilly, of Oskaloosa, for appellee.

GARFIELD, C. J.—This is an appeal by plaintiff-wife, Lois Welch, from a decree, favorable to defendant-husband, changing child support and custody provisions of a divorce decree. We cannot agree with the decree appealed from.

On April 9, 1960, after a contested trial plaintiff, Lois Welch, was granted a divorce from defendant, Glenn Welch. The decree awarded her custody of the two children, "Bud", born July 25, 1945, and Dana, born June 25, 1947; gave defendant the right to visit the children at reasonable times and places but not in plaintiff's home; ordered defendant to pay $40 per month for each child until he became 19, but these payments were not to be liens on any land of defendant unless later made so by court order.

On June 1, 1962, defendant filed application for modification of *the amount* of the monthly payments and to make more specific the decree with regard to visitation privileges. Pleaded grounds for the application are that subsequent to the entry of the divorce decree circumstances have changed in that defendant is only making about $65 per week take-home pay, whereas at the trial of the divorce case it is defendant's understanding the evidence showed he was making $100 per week. Also that visitation rights are now being denied defendant.

An amendment to the application for modification alleges there has been a change in circumstances since the divorce decree in that the two boys are making a substantial amount of money, the sums contributed by defendant are not being used for their support and therefore *the amount* of payments should be reduced.

After hearing evidence on the application for modification and resistance thereto, the court decreed the custody of the

younger boy should be changed from plaintiff-mother to defendant-father and a named juvenile probation officer, acting jointly with defendant being responsible for the boy's care; monthly payments from defendant for the younger boy's support were discontinued as of May 31, 1963 (the hearing was held July 24, and the decree entered July 29, 1963); support for the older boy should be discontinued at his 18th, rather than his 19th, birthday; the accrued child support payments should remain an obligation of defendant but should not be subject to execution except at the rate of $150 annually, commencing May 1, 1964.

The decree just referred to is based on these findings of changes since the divorce decree was entered: defendant's earnings have dropped from $70, to $60, per week take-home pay; plaintiff's earnings have improved to $50 a week (the amount of her earnings at the time of the divorce trial is not stated); the older boy has take-home pay of $50 per week during the summer and $25 per week during the school year; the younger son earns an average of $20 per week during the summer with the prospect of similar earnings during the school year; the older boy graduated from high school, received a scholarship, has saved $220 to start college in the fall and he thinks he can put himself through school except for board and room which is available with his mother; the younger boy left his mother's home and is now living with a McMains family and wants to live with his father; there is conflict between the younger boy, his mother and her male companion.

The relief granted by the decree appealed from is without substantial support in defendant's application and the evidence in the record.

■ I. Nothing in the application or amendment thereto sets out any change of circumstances since the divorce decree was entered that supports a change in its custody provisions nor indicates a desire therefor. The issue of change of custody was not raised. Nor was the claim made, certainly not clearly, that the monthly support payments for either boy should entirely terminate before he became 19. As stated, prayer of the amended application is merely that the amount of the monthly payments be modified and the divorce decree be made more

specific as to visitation privileges. General equitable relief was not sought and thus we have no occasion to decide what would be the effect of a prayer therefor. Plaintiff had a right to assume the decree would not be changed upon an issue not presented.

Several Iowa cases and some from other states support what is just said. Paintin v. Paintin, 241 Iowa 411, 413, 414, 41 N.W.2d 27, 28, 29, 16 A. L. R.2d 659, 662, and citations (also see annotation at 664); Pearson v. Pearson, 247 Iowa 437, 443, 444, 74 N.W.2d 224, 227.

The Pearson opinion states: "Although an application to modify a divorce decree may perhaps be somewhat informal and lack strict compliance with the rules of pleading, we have held it should set 'out the facts on which the claim for relief is demanded, thus informing the defendant of the allegations he has to meet and enabling him to take issue thereon'." (Citations)

27A C. J. S., Divorce, section 172d, pages 704, 705, states the rule substantially as we have expressed it and cites many supporting precedents.

■ ■ II. Aside from what is said in Division I there are other considerations which call for a reversal. We have held time and again child custody and support provisions of a divorce decree are final as to the circumstances then existing. Such provisions will be modified only where it is proven by a preponderance of the evidence that subsequent conditions have so changed that the welfare of the children requires, or at least makes expedient, such modification. In matters of this kind the child's welfare is the controlling consideration. Paintin v. Paintin, supra, 241 Iowa 411, 415, 41 N.W.2d 27, 29, 16 A. L. R.2d 659, and citations; Pearson v. Pearson, supra, 247 Iowa 437, 441, 74 N.W.2d 224, 226, and citations; Holesinger v. Holesinger, 252 Iowa 374, 377, 378, 107 N.W.2d 247, 249, 250; Jensen v. Jensen, 253 Iowa 1013, 1015, 114 N.W.2d 920, 921.

■ Of course not every change of circumstances is sufficient basis for modification of a divorce decree. We have said several times a decree will not be modified unless its enforcement will be attended by positive wrong or injustice as a result of the changed conditions. Pearson v. Pearson, supra, and citations;

Jensen v. Jensen, supra; Dawson v. Dawson, 249 Iowa 588, 592, 88 N.W.2d 117, 119.

Also the changed circumstances relied upon must be such as were not within the knowledge or contemplation of the court when the decree was entered. Pearson case, supra, and citations; Holesinger v. Holesinger, supra, 252 Iowa 374, 377, 107 N.W.2d 247, 249; Annotation, 89 A. L. R.2d 7, 21.

Further, modification of a decree should be based upon a change of circumstances more or less permanent or continuous, not temporary. Pearson case, supra, and citation page 442 of 247 Iowa, 74 N.W.2d 224, 226; Gesmacher v. Gesmacher, 247 Iowa 836, 840, 76 N.W.2d 790, 792. The annotation in 18 A. L. R.2d 10, 21 also supports these last two propositions.

Where a change of financial condition of one or both of the parties is relied upon it must be substantial. Jensen v. Jensen, supra, 253 Iowa 1013, 1019, 114 N.W.2d 920, 921; Annotation, 18 A. L. R.2d 10, 37 et seq.; Annotation 89 A. L. R.2d 7, 19.

III. We find no evidence of changed circumstances since the divorce was granted which justifies changing custody of the younger boy from his mother to his father and a juvenile probation officer jointly. Such a change is not shown to be for the welfare of either boy. These two brothers should not be separated and lose the benefit of constant association with each other. See McKay v. McKay, 253 Iowa 1047, 1053, 115 N.W.2d 151, 154, and citations. Nothing appears in the younger boy's conduct which calls for placing his joint custody in a probation officer.

Defendant lives in one room in Oskaloosa, eats his meals in restaurants, and drives back and forth daily to his work in a packing plant in Ottumwa, 25 miles or more away. He is not in position to provide Dana as good a home nor as adequate supervision as his mother is. Defendant and his counsel have conceded as much; also that defendant does not desire the boy's custody.

Defendant testified, "My desire is to have the decree modified so there will be specific times at which I will be permitted visitation * * *. * * * I am not really capable to give a boy what he needs in life * * *." His counsel stated, "He never has

contended he wanted custody of the boy. I think his position [is] he'd rather see the boy at home if he were treated properly."

The older boy insists he wants to continue living in his mother's home. The younger boy left there and, as indicated, went to live with a Mrs. McMains and her five children, ages 5 to 17. He had stayed there about six weeks at the time of the hearing on the application for modification. Mrs. McMains is employed outside her home, and the children are largely on their own, during the day. The two oldest McMains boys have been in trouble which brought them into juvenile court. Defendant has paid Mrs. McMains nothing for Dana's board and room. There is no evidence the McMains home is suitable and the trial court observed he knew nothing about it. He also observed he was confident the boy would return to his mother's home within a reasonable time if a change in his custody were ordered.

The younger boy left plaintiff's home to live with the Mc-Mains, with whom he was not well acquainted, because he resented treatment he received at home. We are not persuaded the treatment is shown to have been unreasonable or to justify his leaving home. One of the boys, probably the older, although the record does not clearly so show, left plaintiff's home and went to live with defendant seven months because his mother would not get him a motorcycle. The boy who was denied this luxury apparently no longer resented the denial at the time of the hearing. The boy was probably better off without the motorcycle.

Plaintiff has worked steadily since the divorce was granted as well as during a good share of her married life. She earned $50 a week take-home pay at the time of the hearing. How much she earned at the time of the divorce does not appear. She carries hospital and life insurance for each boy. She seems to be thrifty and a better manager than defendant who says he owes "about everybody in town."·

IV. ·Evidence of changed financial conditions since the divorce was granted is not persuasive. Such changes as are shown can hardly be said not to have been contemplated by the court, or more than temporary, or of a substantial nature.

Defendant testified at the hearing his average take-home

pay was about $60 a week and when the divorce was granted it was "around $70." As stated, his application for modification alleges his take-home weekly pay was about $65. No records were offered—only estimates and approximations. Twenty-eight days after the divorce was granted the court found defendant's take-home pay was approximately $60 per week. This finding was in an order declaring defendant in contempt for willful violation of the decree in more than one respect.

At the time of the hearing in July 1963 each boy was working in the same food store. Bud was earning about $50 per week take-home pay. He has worked in this store since about eight and one-half months before the divorce. Bud then earned less than $50 a week—how much less is not shown. He had graduated from high school, saved $220 for his college expenses and won a scholarship to a small college in Oskaloosa. He and his mother hoped he could get a college education. He will probably need whatever help he can get from his father within the terms of the divorce decree.

The cost of college education for children of divorced parents is frequently considered a factor in increasing support payments from the father. Annotation, 89 A. L. R.2d 7, 71.

The younger boy had worked a little over five weeks at the time of the hearing, mostly carrying out purchases for customers. His weekly take-home pay was about $20—at $1 an hour.

It seems probable it was within the contemplation of the court at the time of the divorce that the older boy would continue to work in the food store or elsewhere outside of school hours, especially during summer vacations. Also that his pay would increase as he grew older and more experienced. So far as shown the younger boy received $100 or a little more for his work in the three and one-fourth years between the time of the divorce and the hearing in the summer of 1963. This too could hardly have been outside the contemplation of the court when granting the divorce. Pearson v. Pearson, supra, 247 Iowa 437, 442, 74 N.W.2d 224, 227.

V. For fear it may be thought we have overlooked it, we mention another matter although it has not been argued. As stated, the court terminated support payments for the younger

boy as of two months before the decree appealed from was entered. This is contrary to the rule which has prevailed in Iowa commencing with Delbridge v. Sears, 179 Iowa 526, 160 N.W. 218, that support payments under a divorce decree may not be reduced retroactively. Basis for the rule is that the only power to change the provisions of the original decree stems from what is now section 598.14, Code 1962, the right to payments which have accrued under such decree is vested and may not be taken away.

■ It also seems the provision of the decree of July 1963, that other accrued payments for support should not be subject to execution except at the rate of $150 annually, commencing May 1, 1964, violates the rule referred to. See Roach v. Oliver, 215 Iowa 800, 804, 244 N.W. 899. (The court found defendant was in arrears on child support some $550. Plaintiff claims the amount is much larger.)

The questions involved in Delbridge v. Sears, supra, and the Iowa decisions which follow it are fully discussed in annotations, 94 A. L. R. 331; 6 A. L. R.2d 1277. The later annotation says at page 1328 the majority rule is that the courts may cancel arrears of support payments which accrued after the filing of an application for modification but prior to entry of an order based thereon. Further consideration of this particular point may be deferred until it is presented in argument.

VI. We may observe defendant has filed no brief. However, the printed record on which the appeal was presented was agreed to. Long delays in hearing the application for modification and in submitting the appeal (apparently without the fault of the courts) are regrettable.

The decree appealed from is reversed and the cause remanded with direction to dismiss defendant's application for modification.—Reversed and remanded.

All JUSTICES concur except HAYS, J., not sitting.