BETTY JUNE SMITH, appellant, v. DELMAR GLEN SMITH, appellee.

No. 51631.

(Reported in 133 N.W.2d 677)

MARCH 9, 1965.

Stipe, Davidson & Hemphill (at trial), of Clarinda, and Ross, Johnson, Stuart, Tinley & Peters (on appeal), of Council Bluffs, for appellant.

James A. Lucas, of Bedford, for appellee.

GARFIELD, C. J.—Plaintiff Betty Smith and defendant Delmar Smith each applied for modification of child custody, visitation and support provisions of the decree granting plaintiff a divorce on the ground of inhuman treatment and custody of the two children of the marriage. Following a hearing before the same judge who heard the contested divorce trial the decree was modified in favor of defendant and plaintiff has appealed therefrom.

Each application for modification stems from the fact that in March 1964 plaintiff and the children moved from Bedford, Iowa, where they had been living, to Lincoln, Nebraska, where plaintiff obtained employment. The divorce decree was entered November 1, 1963.

The two children are Linda, then 12, and Steven, then seven. The parties had lived together in Bedford about 18 years. Under the decree defendant was to have the children with him 24 hours commencing at 5 p.m. every Saturday, from 9 to 5 Thanksgiving Day and his birthday, and the entire month of June. Defendant was to pay $75 a month child support for each child ($150 in all) until the child becomes 18 or marries, also family indebtedness of about $1800.

The decree further provided the court retains jurisdiction of the cause to modify the child custody and support provisions of the decree as changed circumstances might warrant. This adds little if anything to the provision of section 598.14, Code, 1962, authorizing changes in decretal orders relating to the children and maintenance "when circumstances render them expedient."

Rent of the home in Bedford (population 1807) was $50 a month. Plaintiff had no income other than the child support payments and about $4 a week for intermittent work at a church. She was unable to maintain herself and children on this income without financial help from her parents and friends. Until 1950, when the parties planned to have children, plaintiff had done secretarial work. After the divorce plaintiff tried without success to obtain such work in Bedford and also inquired about jobs in Clarinda, 20 miles away.

Defendant does not think plaintiff exhausted the possibilities for work in Bedford but we feel she made a sincere, good-faith effort to obtain employment there. We find no competent evidence any work for which she was suited was available in Bedford.

Plaintiff obtained a good position as secretary for an executive in Lincoln, Nebraska, she and the children moved there and she commenced work March 24, 1964. The move was made partly so plaintiff could eventually take work in the state university at Lincoln and Linda could attend there when old enough. Getting the children from Lincoln to Bedford each weekend and for defendant's birthday on a school day in April, to visit defendant, and then returned to Lincoln presented a difficult problem. Plaintiff had no automobile and was unable to acquire one. Defendant, to whom the family car was awarded, furnished no

transportation for the children on these weekly visits. Public transportation between Lincoln and Bedford is very poor.

In the eight weeks after plaintiff and the children moved to Lincoln before the hearing on modification of the decree her parents drove their car 2500 miles to help get the children from Lincoln to Bedford and back to visit defendant. Much of the travel was by bus or train by roundabout routes to or from a town 20 miles or more from Bedford. It was frequently as late as 12:30 Sunday night when the children were back in Lincoln. Several times they were so exhausted they missed school on Monday.

Largely because of the matters above referred to, which were shown at the hearing, plaintiff applied on May 6, 1964, for modification of defendant's visitation privileges and asked that he be held responsible for at least part of the transportation of the children. Hearing was held May 15. Two and one-half hours before the hearing defendant filed his answer to plaintiff's application and his own application for modification of the decree alleging the move to Lincoln was not for the best interests of the children, plaintiff had not exhausted employment opportunities in Bedford or vicinity, defendant lost three exemptions on his income tax by the divorce, plaintiff was earning $320 a month, his $150-a-month support payments should be reduced to $50 or he will make a home for the children in Bedford through his sister and parents.

Plaintiff and defendant were the only witnesses at the hearing. At its conclusion the court announced his decision that defendant should have the children from the time school is out in the spring, usually about June 1, until it resumes in the fall, usually in September; should pay no child support during those summer months, and the support payments provided by the divorce decree from September through May should be reduced from a total of $150 to $75 a month.

In announcing the decision no provision was made for visits to the children by defendant during the school year. Defendant's counsel asked if such visitation privileges could not be granted provided defendant were willing to go to Lincoln to see the children. After some discussion the court announced defendant

could see the children in Lincoln on the first and third Sunday of each month from 1:30 to 6:30 p.m. and plaintiff should have like privileges to visit the children in Bedford during the summer vacation from school. Only plaintiff has appealed from the decree containing the above provisions.

I. We cannot approve the award of custody to defendant during substantially a fourth of the calendar year. We have pointed out many times it is usually unwise and not for a child's best interests to be placed in one household part of the time and part time in another. In many instances such an arrangement proves destructive of discipline. Experience also shows the party who has the children for the shorter period sometimes sows seeds of discontent in them, inculcates in them a spirit of dissatisfaction and rebellion against authority and tries to wean the children away from the party in whose custody the decree placed them.

Authority for what is just said includes Bennett v. Bennett, 200 Iowa 415, 418, 203 N.W. 26, 27; York v. York, 246 Iowa 132, 138, 139, 67 N.W.2d 28, 32; Rahn v. Cramer, 249 Iowa 116, 120, 85 N.W.2d 924, 927; Huston v. Huston, 255 Iowa 543, 553, 122 N.W.2d 892, 898, 899.

York v. York, supra, says split custody should be granted "only for the most compelling reasons." In Rahn v. Cramer, supra, the trial court extended the time one parent was to have one or more of the children from not to exceed four weeks of the summer to about two months. We reversed this change in the divorce decree and observed split or double authority cannot help but be damaging to the child.

Nothing in Mason v. Zolnosky, 251 Iowa 983, 988, 989, 103 N.W.2d 752, 755, or the other two precedents defendant cites on this point runs counter to the views we have expressed. The provision for divided custody in the Mason case was in a decree rendered prior to the one then under attack and we held, as we have many times, no material change in circumstances was shown to warrant a modification of the earlier decree. The opinion states, "It needs no citation of authority for the proposition that a divided custody is to be avoided if reasonably possible."

We are clear defendant has not shown by a preponderance

of the evidence this division of custody would be for the best interests of the children. We understand defendant has no home of his own and lives with his parents or sister or both. He evidently would have the children live with his parents if he had custody. Defendant works full time in a men's clothing store and could not be with the children during working hours.

Nothing is shown derogatory to plaintiff or the home she has provided in Lincoln. Plaintiff testified, and it is not disputed, the duplex in which they live is ideal for the children. There is not a lot of pedestrian or car traffic. The children have room to play. They have nice neighbors, many children nearby and Linda and Steven have many good friends. Plaintiff has arranged with a reliable woman who lives only a few steps away to watch the children until they leave for school, after plaintiff goes to work in the morning, and after school, until she returns from work. There is no competent evidence the children have ever been left alone without being watched. They are doing well in school. Plaintiff has been active in church; defendant has taken no part in church. Plaintiff is anxious for the children to have religious training.

In announcing his decision the court observed it is an advantage to the children to live in a university town and "I do not think it is inimical to their welfare at all."

In what is said so far in this division we have considered only the welfare of the children and have disregarded the important question whether such a material change of circumstances, since the time of the divorce decree, has been shown as to require, or make expedient, awarding custody to defendant two additional months. Authorities need not be cited for the proposition the divorce decree is final as to circumstances then existing and it will be modified only where such changed circumstances as those above referred to are shown.

■■ We have said several times a divorce decree will not be modified unless its enforcement will be attended by positive wrong or injustice as a result of the changed conditions. Welch v. Welch, 256 Iowa 1020, 1024, 129 N.W.2d 642, 644, and citations. Also—and this is important in considering both the assigned error now discussed and the remaining one—the changed

circumstances relied upon must be such as were not within the knowledge or contemplation of the court when the decree was entered. Ibid and citations.

Of course the move to Lincoln and plaintiff's employment there amounted to a change of circumstances. But we think it was not such a change as calls for an award of custody to defendant for three months rather than one. The divorce decree gave plaintiff the care, custody and control of the children except for the times specified therein that defendant was to have them. It also provided he shall not call either child on the telephone or in anyway interfere with plaintiff's custody or control during the time she has them. Incidentally, evidence offered by defendant shows he did not observe the prohibition against telephoning either child. Plaintiff was no less able to give the children proper care for 11 months of the year than when the three lived in Bedford.

Defendant criticizes plaintiff for moving the children to Lincoln without obtaining permission of the court. Perhaps she should have asked such permission as a matter of courtesy. However, as the court observed, the move did not violate anything in the decree. The decree restored to both parties all the rights and privileges of unmarried persons except to marry within a year.

Nor do we think plaintiff's employment was such a change as justified the modification of the decree in this respect. When the decree was entered the trial court could hardly have contemplated that plaintiff and the children could live on $150 a month child support and what little she was then earning. Defendant testified at the hearing plaintiff admitted during the divorce trial she was capable of getting a position and had done so in the past. It seems reasonable to conclude the court then contemplated plaintiff would obtain employment even though he may not have foreseen she and the children would move so far as Lincoln.

One other circumstance should be mentioned. Defendant offered in evidence some letters purporting to be from the children to him after the divorce was granted. Most of the writing was Linda's but some was Steven's. Two of the letters were written prior to the move to Lincoln, the others since then. The letters express love for defendant and a desire to live with him.

One expresses Linda's dislike for school in Lincoln, having to prepare the evening meal and doing homework for school. This letter says, "We'd have more fun if I was with you." One letter of Linda written before they left Bedford states, "I just finished my icky' ole' math." So her dislike for school was evidently not peculiar to Lincoln, nor did the move there have much to do with her desire to live with her father.

We account for these letters at least in part, by the normal resentment of the children of the mother's parental discipline during the school week and the indulgence shown them by the father on weekends when school, preparing supper and homework were not required. How much weight the court gave these letters is not clear. In announcing the decision he commented on them twice, once near the outset and again to say he would keep them in mind and retain jurisdiction.

Certainly these letters are not entitled to controlling weight on such a hearing as the one here. The wishes of a seven- or eight-year-old should be given little if any weight since he is not of an age to exercise discretion in choosing a custodian. Linda's wishes are perhaps entitled to more consideration but less than if this were an original hearing on custody, not an application for change therein based on alleged subsequent change of circumstances.

We may observe the letters were clearly hearsay but no objection to them was made.

Plaintiff concedes the move to Lincoln created problems regarding the decretal provisions for weekly visitation which justified the modification of such provisions. Since this part of the second decree is not assailed we give it no attention.

II. Plaintiff's remaining complaint is against the reduction in monthly child support from $150 to $75. She argues a substantial change of circumstances has not been shown, which was not within the contemplation of the court at the time of the original decree, to justify the reduction. Plaintiff thinks the court reduced the award because he believed it inequitable.

Of course the court was without power to modify the decree merely on the ground it was inequitable, if that were true. Relief from the decree on that ground could be granted only by

appeal therefrom. Smith v. Smith, 254 Iowa 1120, 1121, 120 N.W.2d 448, 449; Morrison v. Morrison, 208 Iowa 1384, 1386, 1387, 227 N.W. 330.

Defendant's gross income remained the same as at the time of the divorce. He was somewhat worse off financially at the time of the hearing because of loss of personal exemptions for income tax purposes. However, the court must be held to have known and contemplated this when the decree was entered. As against this federal income tax rates were somewhat reduced in 1964 and a further reduction applies in 1965. Defendant in- creased his indebtedness $360 by a loan from a sister-in-law. It is clear these changes are not such as justify reducing the child support by half.

The other changed circumstances are the move to Lincoln, plaintiff's employment there and the results thereof. We have held these circumstances insufficient basis for the further divi- sion of custody between plaintiff and defendant, always to be avoided if reasonably possible. But it does not follow that they, especially the move to Lincoln, afford insufficient basis for some reduction in child support. Although it seems the court must have contemplated when the divorce was granted plaintiff would get employment if she could, it is probable he did not foresee she and the children would move so far from Bedford as Lincoln or perhaps that she would obtain such desirable full-time em- ployment.

The move to Lincoln required a good deal of expense in pro- viding weekend visitation between defendant and the children. Prior to the decree appealed from, plaintiff, with the help of her parents, bore all this expense. Under this decree she is relieved of it and defendant must bear the expense of the semimonthly trips to Lincoln to see the children. This will put a financial burden on him which will offset at least part of the money bene- fit to him and detriment to plaintiff from a reduction in monthly support payments.

Plaintiff's gross pay from her job is $320 a month; her take- home pay $270.80. Apparently the job is permanent. We are told Nebraska has no state income tax as Iowa does and plaintiff will derive a small benefit from this. Defendant's gross pay

remains at $425 a month. Reduction in his take-home pay, as indicated, must be held to have been within the court's contemplation when the divorce was granted. Defendant's capacity to earn, save and pay his debts seems limited.

Although the showing of changed circumstances, not within the court's contemplation when the original decree was entered, to justify a reduction in child support is not strong, we think a reduction to $50 a month for each child ($100 in all) is warranted. It is quite possible this reduction will prove to plaintiff's ultimate advantage. It is hoped this reduction in support payments will be an incentive to defendant to do his best to make the reduced payments.

Plaintiff cites two precedents on this phase of the case. We do not think either is inconsistent with the holding just stated. Welch v. Welch, supra, 256 Iowa 1020, 129 N.W.2d 642, has several distinguishing features on the facts. In Smith v. Smith, supra, 254 Iowa 1120, 120 N.W.2d 448, also cited, the divorced husband sought a reduction in payments because of his remarriage, temporary employment of the wife that commenced before the divorce and alleged inequity of the decree—a matter we have already commented on. We held the remarriage, obligations assumed thereby and the temporary employment were not such changed circumstances as justified the reduction. The opinion intimates the case might be different if the wife had obtained regular permanent employment subsequent to the divorce. See annotation, 18 A. L. R.2d 10, 59 to 64.

III. As stated, the decree appealed from provides defendant need not pay child support during the time he has custody of the children which was fixed as about June 1 to September 1 each year. Since we cannot approve this award of added custody to defendant we cannot approve relieving him from paying child support during the summer. The original decree required him to pay support each and every month, including June when he was to have the children. We have approved reducing the monthly . payments from $150 to $100 but there is no sound basis shown for relieving defendant from his obligation to make this reduced payment in June. In other words, the requirement of the divorce

decree that support is to be paid each month must stand, but in the reduced amount.

IV. As virtually every appellee in a case of this kind does, attention is called to statements in some of our opinions that the trial court has discretion—we have even said "a high degree" of discretion—in a matter of this kind and we will not interfere with his decision unless an abuse of discretion is shown. White v. White, 251 Iowa 440, 443, 101 N.W.2d 18, 20, points out that these statements do not relieve us of the duty to review such a case as this de novo, nor are we bound by the trial court's findings therein.

Of statements in some of our opinions that the trial court's findings are entitled to much weight—we have even said "great weight"—Huston v. Huston, supra, 255 Iowa 543, 550, 122 N.W. 2d 892, 897, observes, "This, however, seems too strong in view of our duty to review the case de novo." (Citations)

The decree appealed from is affirmed in part and reversed in part and the cause is remanded for decree consistent with this opinion. Costs of the appeal are taxed to defendant.—Affirmed in part; reversed in part, and remanded.

All JUSTICES concur except that THOMPSON, LARSON and STUART, JJ., would reduce the child support payments to $75 rather than $100, per month.