DIANE D. WEILAND, appellee, v. SYLVESTER G. WEILAND, appellant.

No. 51024.

(Reported in 122 N.W.2d 837)

478

JULY 16, 1963.

David Kintzinger, of Kintzinger, Kintzinger & Van Etten, of Dubuque, for appellant.

C. J. May, Jr., of Dubuque, for appellee.

GARFIELD, C. J.—Appellant-husband's principal contention

upon this appeal is that the divorce decree requires him to make support payments in excess of his ability to pay. He also contends he should have the right to visit his children, placed in their mother's (appellee-wife's) custody, once each week instead of every other week. We think there is some merit in the first of these contentions.

Since plaintiff-wife's right to a divorce and custody of the children is not now challenged, the evidence on these issues need not be recited in detail. Plaintiff and defendant were married October 6, 1956, and lived together until May 7, 1962, when plaintiff took the three children and went to the nearby home of her parents. May 10 she brought this suit for divorce, child custody, alimony and child support. Trial was had September 5 and decree of divorce rendered September 13, 1962, on the familiar cause that defendant was "guilty of such inhuman treatment as to endanger the life of his wife" (section 598.8, subsection 5, Code, 1962).

The decree requires defendant to pay $10 a week as support for each child ($30 in all) until the child becomes 18 or marries. The children were five, four and three at the time of the decree. Defendant was also required to pay all expenses for the prenatal care and those incident to the birth of the child which was unborn at the time of the decree. Also all debts of the parties. These totaled about $2054. Plaintiff was given the household furniture and if defendant disposed of any of it during pendency of the action he was required within 10 days to replace it with articles of equal or greater value. Defendant testifies in effect he sold much of the furniture and paid debts with the proceeds.

Defendant was given the right to visit the children at plaintiff's home every other Saturday afternoon.

Aside from the remaining furniture, household belongings, clothing and personal items neither party had any money or other assets except that defendant had a 1954 Chevrolet car on which he owed $300. Defendant had had no job since June 29, 1962. That one lasted about two months and defendant then earned a total of $377.95 plus $25 deducted as part payment on a television set purchased by him. Neither plaintiff nor the children received any of these earnings. Defendant says he has been

trying to get a job but they are scarce around Dubuque where the parties lived. He has been living with his grandparents and owes them $10 a week for board and room.

Defendant has been a victim of mental illness of the paranoia type and his doctor testifies he had the illness and was taking medicine therefor at the time of trial. He was a patient at the state Independence Mental Health Institute for two periods of three months each commencing in March 1960 and July 1961. On October 11, 1961, he was discharged from the institute as recovered. Both commitments to the institute were made by the commission of hospitalization of Dubuque County following an information filed by plaintiff. The neighbors were somewhat fearful of defendant because of his mental disturbance. His doctor testifies that while he was not dangerous at the time of trial, he could be. Apparently this mental illness and defendant's confinements at Independence have made it more difficult for him to get employment.

We are not unduly sympathetic with defendant. Undoubtedly he brought much of his trouble upon himself by spending too much time and money in taverns and by other conduct not to be commended.

Defendant did not adequately support his family for some time prior to commencement of the suit and plaintiff has received nothing from him since they separated. She and the children have lived on payments received from ADC (Aid to Dependent Children) of about $140 per month. Plaintiff testifies her rent is $60 a month, food for her and the children, other than milk, averages $15 a week, and milk costs at least $5 a week. Thus the ADC payments scarcely cover cost of rent and food, with no allowance for clothing, doctor bills or other expenses.

I. We have frequently stated the matters to be considered in awarding alimony and child support to a wife who is granted a divorce. Among them are the needs of the wife and children, the husband's ability to pay, the age, health and future prospects of the parties, the earning capacity of each, the duration of the marriage, the conduct of the parties and any other facts which assist the court in reaching a just and equitable

decision. Brannen v. Brannen, 237 Iowa 188, 193, 21 N.W.2d 459, 462, and citations; Flanders v. Flanders, 241 Iowa 159, 161, 40 N.W.2d 468, 469; Stillmunkes v. Stillmunkes, 245 Iowa 1082, 1088, 65 N.W.2d 366, 370; Alberhasky v. Alberhasky, 250 Iowa 986, 1001, 97 N.W.2d 914, 924.

We have observed these precedents do not add greatly to this language of section 598.14, Code, 1962: "* * * the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right." Rasmussen v. Rasmussen, 252 Iowa 414, 423, 107 N.W.2d 114, 119.

Here there are virtually no joint accumulations, so the contribution of each spouse thereto, an important matter in many divorce cases, need not be considered.

We have no doubt plaintiff and the children could readily use the weekly support payments the decree requires from defendant, without possibility of their living in luxury. But the necessities of the wife and children are not the only matter to be considered. Freel v. Freel, 253 Iowa 327, 330, 112 N.W.2d 371, 373; Nelson v. Nelson, 246 Iowa 760, 768, 68 N.W.2d 746, 751, and citations. Other considerations, as stated, include the husband's ability to pay, the health and future prospects of the parties and the earning capacity of each.

■ It seems clear the amount of the weekly payments fixed by the decree exceeds defendant's ability, at the time of the divorce, to pay. His mental health, future prospects and earning capacity are not good. Of course defendant must have at least food, shelter and clothing for himself if he is to get or hold a job. His indebtedness is considerable for one without means. We think the weekly payments should be reduced by one half, from $30 to $15 as of the time of the divorce. It is hoped this reduction will serve as an incentive to defendant to do his best to make the payments and will result in plaintiff's receiving more money than if the decree were not modified in this respect.

This from White v. White, 251 Iowa 440, 442, 443, 101 N.W.2d 18, 20, is quite applicable here:

"A divorce does not, ipso facto, increase the total family income, while it inevitably adds to the expense of living for the

members. Courts are constantly faced with the dilemma of how to divide a total income insufficient for the family needs when the members are separated. It is urged on one hand that a certain amount is required for the support of the minor children; on the other, that the divorced father's income is unequal to the burden of supplying such sums. Both contentions are unfortunately often correct. * * *

■ "We must be mindful not only of the needs of the children but of the divorced father. He should support his children, as best he can. But it will not do to burden him to the extent that all incentive is to be destroyed. * * * Some balance must be found between the needs of the children and the father's ability to pay."

See also Berry v. Berry, 253 Iowa 388, 112 N.W.2d 663.

■ II. We are not persuaded defendant should be accorded the right to visit his children once each week rather than once every other week as the decree provides. He insists he loves the children and there is no evidence he has physically mistreated them. However, defendant's mental illness must not be overlooked in considering the extent to which he should visit the children.

In all matters relating to child custody our first and governing consideration must be the best interest of the children. See rule 344(f)15, Rules of Civil Procedure. At best, in view of defendant's mental illness it seems doubtful the best interest of the children—and perhaps of defendant himself—would be served by increasing the number of his visits to them.

In Andreesen v. Andreesen, 252 Iowa 1152, 1157, 1158, 110 N.W.2d 275, 278, 279, the wife was the unfortunate victim of the same type of mental illness as this defendant. Although hers was more severe, the symptoms of the illness in each were similar. We there reversed an award of a little girl's custody to the wife (mother) and remanded the case to the trial court to hear and determine her right to visit the child unless the parties could reach an agreement thereon which met the court's approval. We observed: "Plaintiff should have reasonable visitation privileges, probably about once a month, unless—as is entirely possible— this would not be conducive to the welfare of the child or of

plaintiff herself." The opinion comments upon "the almost certain detrimental effect of plaintiff's mental illness upon Sheryl's mentality and personality."

The decree is modified as provided in Division I hereof. As so modified it is affirmed. The cause is remanded to the trial court for such modified decree. Costs in this court are to be taxed to defendant.—Modified, affirmed and remanded.

All JUSTICES concur.