Susan E. NORENBERG, Appellee,

v.

Larry J. NORENBERG, Appellant.

No. 53397.

Supreme Court of Iowa.

June 10, 1969.

Shea, Mitchell & Jackson, Cedar Rapids, for appellant.

Nelson & Fassler, Cedar Rapids, for appellee.

LARSON, Justice.

This appeal and cross-appeal from a modification of a 1965 divorce decree involve the custody and support of a four-year-old child Ellen. In this proceeding custody was changed from the father to the mother, visitation rights were provided, and judgment for child support in the sum of $15 per week was entered against the father. The father appeals, and the mother cross-appeals challenging the adequacy of the support provision. We affirm the modification on both issues.

Appellant father contends the trial court erred (1) in finding the evidence of a material change of circumstances sufficient to justify a modification of the original divorce decree, and (2) in concluding the evidence established the best interest of the child and required or made expedient the change in custody.

This appeal being considered de novo, and a decision in such matters being dependent upon the peculiar facts that appear, a careful examination of the entire record is necessary. Rule 334, Rules of Civil Procedure.

The record discloses these parties were married when the plaintiff Susan was 15 years of age and still a high school student in Cedar Rapids, Iowa. Their child Ellen was born July 28, 1964, approximately

six months later. As so often happens in such cases, this marriage lasted less than two years. Susan was granted a divorce October 15, 1965, and, pursuant to a written stipulation executed by both parties, custody of the child Ellen was awarded to the father, Larry J. Norenberg. Susan attempted to return to high school but soon dropped out and worked at various places in Cedar Rapids until August 1966 when she obtained employment in Davenport, Iowa. She was married to Gerald Bauer in March 1967 and at the time of these proceedings resided in Davenport with her husband, who has gainful employment and at the time of this hearing was graduating from the Palmer School of Chiropractic.

After the divorce, the child Ellen was cared for by the father in his home with his mother's help and that of a babysitter. Later he paid Susan's older sister, with whom Susan lived, $15 per week to care for the child. Seven or eight months later, when Susan went to Davenport, the child was cared for by the father's parents. During all of this period and until the father's marriage to his present wife Marsha on December 24, 1966, there were no visitation problems. Susan would come to Cedar Rapids every two or three weeks to visit the child and spend several hours with her, and on several occasions took the child to Davenport for a visit. She was on such a visit when the father requested her return for his wedding.

Visitations in Davenport ceased after the marriage, and there was considerable testimony as to Marsha's attitude toward continued visitations at the defendant's home. Marsha's dislike for Susan and her association with her child was demonstrated on at least three occasions. On one occasion, which Marsha did not recall, Susan and her husband testified Marsha objected to their scheduled visitation saying: "Get that bitch out of my house and make her stay on the steps. I don't want her up here." And on another occasion, which Marsha admitted and for which she said she apologized, visitation was objected to

but finally granted after the father interceded. Readmittance to the home was denied Susan and the child when they returned. After a several hour wait, the father returned home and it was necessary for him to break in the door to gain entrance to the apartment. The child was upset and worried by these displays and on this occasion came back to the car crying and said to her mother, "Mommy, please take me home with you."

This and other such unfriendly displays seemed to shake the father and he talked to Susan and her husband about Marsha's attitude and made inquiry as to what kind of home Susan could provide for the child.

Marsha's determination to restrict or terminate Susan's visitations culminated in her application to adopt Ellen in August 1967. This application, joined in by the defendant father, was strenuously resisted by Susan and, after trial, the matter was dismissed. It is noteworthy that at this hearing defendant testified his wife Marsha did not care for Susan and that it was not pleasant for Susan to visit the child in their home.

These parties appeared before the experienced trial judge and he was satisfied there had been a substantial change in the conditions since defendant's remarriage and that Susan's pleasant and reasonable visits with the child had now become unpleasant and difficult, that this change had resulted in concern and distress to the child, and that if continued Ellen's insecurity would be intolerable. We agree. Of course, not every change of circumstance is a sufficient basis for modification, but we believe no other change of circumstances could be quite as vital to the relationship contemplated by the court's original decree.

■ I. It is well settled in this jurisdiction that the child custody provisions of a divorce decree will be modified only where the applicant for modification proves by a preponderance of the evidence that subsequent conditions have so changed that the child's welfare requires, or at least makes

expedient, such modification. Alex v. Alex, Iowa, 161 N.W.2d 192, 194; Mason v. Zolnosky, 251 Iowa 983, 989, 103 N.W. 2d 752, 755; Kuyper v. Kuyper, 244 Iowa 1, 4, 55 N.W.2d 485, 486; Welch v. Welch, 256 Iowa 1020, 1024, 129 N.W.2d 642, 644; Pucci v. Pucci, 259 Iowa 427, 432–433, 143 N.W.2d 353, 357, and citations in these opinions.

■ II. The trial court has reasonable discretion in passing upon the advisability or necessity for modification of the custodial or visitation rights of a divorce decree, and this court will not disturb its decision unless the record fairly shows it fails to do equity. Pucci v. Pucci, supra; Jensen v. Jensen, 253 Iowa 1013, 1019, 114 N.W.2d 920, 924; Simpkins v. Simpkins, 258 Iowa 87, 90, 137 N.W.2d 621, 623.

■ III. The applicant for a custodial change of a divorce decree has the burden not only to prove by a preponderance of the evidence that subsequent conditions have materially changed, but also to show that a change in the custody will be conducive to the welfare of the child. Harwell v. Harwell, 253 Iowa 413, 418, 112 N.W.2d 868, 872; Alex v. Alex, supra.

■ IV. The evidence discloses both parties have suitable and appropriate physical facilities and finances for the child's care and support. Both love the child, and it appears they will guard her health and provide for her religious and moral needs. They have kept her bathed, her clothes clean, and have taken her to church or Sunday school. Both have provided suitable playgrounds and equipment. Ellen loves both her parents, but when the child was emotionally upset she sought the comfort provided by her natural mother. The trial court observed Susan and her husband appeared happily married and that there was some question as to the happiness of the marriage between the defendant and his present wife. In other words, it appeared Susan's home was without emotional disturbances, while the same was not true of the father's home. It is true Marsha testified she loved the child Ellen as her own and that with her own child born after her marriage to defendant she cared for them equally. Were it not for Marsha's visible dislike for Susan, Ellen's mother, and her display of hostility toward reasonable visitations between mother and child, we would be hard-pressed to say that applicant has proven the best interest of the child required this change of custody. However, we believe this fact and its adverse effect on the child have been adequately proven and are sufficient to make expedient a change. The remaining issue then is, will the child's best interest be served by placing her custody with the natural mother?

■ V. In child custody cases the first and governing consideration of the courts must be the best interest of the child. Rule 344(f) (15), R.C.P.; Fritz v. Fritz, Iowa, 148 N.W.2d 392, 397; Alingh v. Alingh, 259 Iowa 219, 225, 144 N.W.2d 134, 138. All other considerations must yield to the best interest of the child. Its welfare is superior to the claim of anyone. Thein v. Squires, 250 Iowa 1149, 1157, 97 N.W.2d 156, 162, and cases cited therein; 15 A.L.R. 2d 432, 435. The trial court found the child's emotional upsets and tension were directly attributable to Marsha's attitude during authorized visitation between mother and child, and that such interference with the desirable relationship between Susan and Ellen did not contribute to the best interest of the child. The trial court saw and heard these witnesses and was better able to judge the seriousness of this situation. It concluded the only way to solve the problem was to place the child in the custody of the mother, who demonstrated her ability to properly care for Ellen. It was convinced that the undesirable circumstances in the father's home were not temporary or trivial and concluded the change was expedient. We have carefully studied the record and are satisfied from it that that determination was correct.

■ VI. Section 598.14, Code of 1966, authorizes the trial court when granting a

decree of divorce to "make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right" and provides: "Subsequent changes may be made by it in these respects when circumstances render them expedient." We give weight to the findings of the trial court. Rule 344(f) (7), R.C.P. Of course, this does not mean that we are bound by the findings and decree of the trial court if the record fairly shows it fails to do equity, and thus our duty is to try the case de novo. Jensen v. Jensen, 237 Iowa 1323, 1334, 25 N.W.2d 316, 322. We have done so, and find nothing in this record which indicates the trial court's decision was wrong and must therefore affirm its judgment granting custody to the mother Susan.

■ VII. In further support of this determination as to the best interest of the child, we note that no stay order was requested or obtained pursuant to the trial court's modification decree and that the child Ellen has now been in the home of the natural mother for almost a year. Except for cogent reasons, this court has been reluctant to permit continuous disturbances of the family life of a minor, and we would hesitate to require Ellen's return to the father's home here, all other things being equal. Halstead v. Halstead, 259 Iowa 526, 531, 144 N.W.2d 861, 864.

■ VIII. We now come to appellee's contention that the trial court erred in its award of only $15 per week child support. Matters to be considered in awarding child support to a wife who is granted child custody are the needs of the child, the father's ability to pay, the age, health, and future prospects of the parties, their earning capacities, and any other facts which will assist the court in reaching a just and equitable decision. Cole v. Cole, 259 Iowa 58, 143 N.W.2d 350; Weiland v. Weiland, 255 Iowa 477, 480, 122 N.W.2d 837, 839, 1 A.L. R.3d 377, and cases cited; Blaney v. Blaney, 256 Iowa 1151, 1153, 130 N.W.2d 732, 733.

· There is little or no evidence in this record as to the needs of the child Ellen, and none as to the father's financial status or obligations, except perhaps his hourly wage at his trade and the statement that he and his present wife had recently purchased a home in Cedar Rapids. We are not advised as to its value, the obligation remaining thereon, if any, or the equity in the father, if any. It does appear $15 per week had been paid for the care of the child prior to his remarriage.

■ Appellee's argument that, by computing the percentages, the judgment entered by the trial court would be approximately .083 percent of his gross weekly earnings, and that in Reed v. Reed, Iowa, 152 N.W.2d 190, we had approved a 16 percent award, is not persuasive. We have not and cannot recognize any such formula in support awards, but must consider all facts pertinent to a just and reasonable support award.

■ As pointed out in Division VI, the trial court is authorized to provide for the maintenance of the child "as shall be right" and, in doing so, exercises a judicial discretion which will not be disturbed unless the record fairly shows it fails to do equity. We have carefully reviewed the evidence as to support for Ellen and find no reason to disturb the award made by the trial court.

Affirmed on both appeals.

All Justices concur, except MOORE, MASON and LeGRAND, JJ., who concur specially.

MOORE, Justice (concurring specially):

I cannot agree with what is said in Division VII and therefore concur in the result only.

Consideration of events subsequent to the decree of the trial court violates our function as a court of review.

MASON and LeGRAND, JJ., join in this special concurrence.