**Patricia Ann BLACK, Appellant,**

v.

**Dale Edward BLACK, Appellee.**

**No. 54631.**

Supreme Court of Iowa.

Dec. 20, 1972.

Robert C. Oberbillig and J. Jane Fox, Des Moines, for appellant.

J. Riley McManus, Des Moines, for appellee.

**UHLENHOPP, Justice.**

We must decide here whether a divorce decree should be modified to change custody of a child from the mother to the father. The question is largely factual. The case comes down to whether we give controlling weight to the desires of the mother or to the best interest of the child.

Dale E. Black lives with his second wife in Spring Hill, Iowa. Dale was 25 years of age at time of trial in 1970. (All ages are as of time of trial.) He has two children. One is the subject of this litigation —Todd E. Black, five years old, the son of Dale and his first wife, Patricia Ann Black. Todd is presently living with Dale. The other child, Billjon, 20 months old, is the son of Dale and his second wife, Ila Black. This child was born five months after Dale and Ila were married. The family lives in a comfortable three-bedroom house which belongs to Dale's father, a quiet individual who also lives there. Dale is steadily employed, is stable and dependable, supports the family adequately, does not drink, takes family members hunting and fishing, and is attached to Todd. He does not, however, engage in community or church activities. His wife, Ila, performs the duties of stepmother satisfactorily and treats Todd and Billjon alike.

Patricia A. Black, 26, lives in South Lawrence, Massachusetts. She was born and reared in Iowa. She has had three children. One was born before she was married. She testified she became pregnant when she was raped in a railroad yard on the way home from a high school function. She placed that child for adoption. The second child is Todd E. Black. The third child she had after she and Dale were divorced. She testified that the father of the third child was a Marine sergeant to whom she was not married, that the sergeant was later killed in Viet Nam, and that she did not marry him before he went to Viet Nam because she did not want him to feel under an obligation. As last appears from the evidence, Patricia was living with the third child in an adequate apartment near a school, a playground, and a church. She had a job doing office work which was found for her by an agency furnishing temporary office assistance, and she was earning good wages.

Todd E. Black appears to be a normal boy except for two problems. Physically, he has a "lazy eye" which tends to wander when he gets tired. This problem appears to be correctable with glasses. Emotionally, he has shown signs of disturbance.

Prior to the time he was brought back to Dale's home, Todd set fires on four occasions, and one fire did considerable damage. He displayed cruelty toward animal pets and treated small children roughly. He was troubled with nightmares and cried out at night a good deal, although this problem subsided after he was returned to Dale's home.

Dale and Patricia were married on July 11, 1964, and thereafter lived in the home of Dale's father in Spring Hill. Patricia eventually became dissatisfied with the marriage and left the home, taking Todd with her. Considerable bitterness attended the separation, and Dale did not see Todd for some time—the parties blame each other for that. On November 6, 1967, Patricia obtained a divorce. The decree granted her custody of Todd and required Dale to pay $15 weekly child support, which he did regularly until Todd was back in his home.

Patricia and Todd had a difficult time financially after the divorce. They lived on child support and public assistance (Aid to Dependent Children). Patricia started a beauty course which Dale paid for partially. She did not complete the course. She testified that she had phlebitis and could not stand up for extended periods.

Patricia eventually became pregnant, as previously related. She was then living in northern Iowa where she has relatives and acquaintances. She decided to take Todd and go to Boston, Massachusetts, where she had a lady acquaintance. Whether she did this because of her pregnancy or to better herself financially is not clear. She was delivered of the child in Boston and kept the child.

The only work available to Patricia in Boston was menial and low-paying. She determined to improve her earning capacity. With help from the public Work Incentive Program, she began a course in office work.

When she had about five months left on the course, Patricia returned to Iowa dur-

ing Christmas vacation. She desired to leave Todd in Iowa until she completed her course. We think it a reasonable inference that Todd was presenting her a problem. She talked to Dale about taking Todd upon signing an agreement to return him after the five months, but Dale thought he would become attached to Todd and would not accept that arrangement.

Patricia was going with a Melvin Hennings when she was in Iowa that time, and they talked of getting married after she finished her course. Hennings had a married sister, Mrs. Shoemaker, and Patricia made an arrangement to leave Todd with Shoemakers. No one was to inform Dale of the child's whereabouts—the latter at the suggestion of Mr. Shoemaker. This done, Patricia returned to Boston, lived with her other child, and pursued her studies, which she successfully completed.

Shoemakers had difficulty with Todd. When Patricia was nearing the end of her course, her engagement with Hennings was terminated. The evidence is not altogether clear as to the course of subsequent events, but Shoemakers informed Patricia that something had to be done about Todd. Patricia wanted Shoemakers to send him to Boston as an airline passenger at her expense, but they were unwilling to send him alone. Eventually they called Dale to come and get the boy and Dale did so.

Dale has had Todd this time since May 1970, and Todd has done well in Dale's home. Todd set no more fires and his emotional problems subsided. Dale gave testimony regarding Todd's emotional condition and its development to the time of trial in July 1970. He testified in part, "This child really has become emotionally upset, and it seemed like he has been upset. When we received him, I would say that he didn't know one place really from another one. Now that he has been there awhile he has settled down. He has the dogs to play with and he wants a pony and seems really happy. He has no problems at all to speak of, other than once and a

while at night will wake up and he seems to not quite know where he is. He still seems like there is something a little bit disturbed in him. He mentioned a lot about where he had lived." Ila Black also testified in part in July 1970 that "Todd cried an awful lot in his sleep, but he still wakes up in the night talking, but he has got so he don't wake up as much as he did."

After Todd was back in Dale's home, Dale commenced the present proceeding to modify the divorce decree as to custody. The trial court tried the case on the merits and modified the decree by granting Dale custody of Todd (with visitation rights to Patricia) and by terminating the child support payments. Patricia appealed the case to us.

 The principles which control the decision are stated thus in Alex v. Alex, 161 N.W.2d 192, 194–195 (Iowa):

In matters involving child custody provisions of a divorce decree, best interest of the child is first and governing consideration. . . . Child custody provisions of a divorce decree are final as to circumstances existing at time of entry of original decree. Such provisions will be modified only where applicant for modification proves by a preponderance of the evidence that subsequent conditions have so changed that child's welfare requires, or at least makes expedient, such modification. . . . Changed circumstances relied upon to obtain modification of child custody provisions of a divorce decree must be such as were not within the knowledge or contemplation of the court when decree was entered and must be "more or less" permanent or continuous, not merely transitory, variable or temporary. . . .

And, after repeating the principles stated in the Alex case, the court said in Norenberg v. Norenberg, 168 N.W.2d 794, 797 (Iowa):

The trial court has reasonable discretion in passing upon the advisability or necessity for modification of the custodial or visitation rights of a divorce decree, and this court will not disturb its decision unless the record fairly shows it fails to do equity. . . . The applicant for a custodial change of a divorce decree has the burden not only to prove by a preponderance of the evidence that subsequent conditions have materially changed, but also to show that a change in the custody will be conducive to the welfare of the child. . . . In child custody cases the first and governing consideration of the courts must be the best interest of the child. . . . All other considerations must yield to the best interest of the child. Its welfare is superior to the claim of anyone.

A number of material and uncontemplated changes have occurred here. Among them are these. The court which rendered the original decree could hardly have anticipated that Patricia would subsequently go to Boston, have a child out of wedlock, and move Todd from place to place, or that later she would leave Todd for five months with a family of strangers to him, separate herself from him by more than a thousand miles, and keep Dale in ignorance of that situation. The original court could hardly have anticipated Todd's emotional symptoms which developed as a result of those experiences. Nor could that court have foreseen that Dale would be called to get Todd and that Todd would be living again in his original home. On the evidence, the trial court in the present proceeding properly found conditions had so changed that the question of Todd's custody required determination in the light of existing circumstances. This court has held that reconsideration of custody was required with less changes of circumstances than these. E. g., Norenberg v. Norenberg, 168 N.W.2d 794 (Iowa).

As stated in Alex, on the question of custody the "best interest of the child is the first and governing consideration."

But two choices of custody in fact exist here—Patricia or Dale. Patricia had the child with her longer than Dale had him, and she is the mother. She is very attached to the child and strongly desires to have him. She showed strength in obtaining training for a vocation and she is now capable of earning good wages. With the help of child support from Dale, she should be able to maintain herself and the two children.

On the other hand, Patricia has moved about from place to place—she lived in four places in Boston. She will have to use sitters to care for the two children, and, unless she enters into a permanent remarriage, she will likely have to bring Todd through adolescence without the help of a spouse.

Dale also has pluses and minuses. He and Todd are fond of each other. Dale has a good home and it is the familiar home of Todd's earlier years. Both spouses are present in the home. Dale has an apparently permanent marriage with a wife who takes care of Todd equally with her own child; steady employment providing wages sufficient to support the family; a stable temperament; and a desire to take care of Todd. Dale spends his time on the job, at home, and hunting or fishing with family members, and he can provide the child with a family environment. He does not drink. Yet he cannot fully take the place of Todd's mother, and he was not with Todd as much as Patricia was during Todd's early childhood.

We have said in similar cases that the past affords some guidance for the future. In re Morrison, 259 Iowa 301, 307, 144 N. W.2d 97, 100 ("a determination is necessarily based on what is likely to occur in the future because of present conditions and because of what has occurred in the past"). While Todd was in Patricia's custody in the past, he developed emotional problems which raise a danger signal. Patricia may have so improved and may be so much better situated that those problems would not recur. But we have been alerted to the child's problem and we would subject him to a substantial risk by returning him to that environment. In Dale's hands the child has become more calm and better adjusted.

Upon consideration of the whole case and mindful that the trial court had the parties before it and observed them firsthand, we are persuaded that the modification decree should stand. The probabilities are that Todd's interests over the next 15 years will be better advanced in Dale's hands than in Patricia's.

We reach this conclusion reluctantly, because of Patricia's desire to have the child. Were only the wishes of Patricia and Dale involved, we would have a different case. The rule is, however, that parents' desires are subservient to children's best interest. Wendel v. Wendel, 252 Iowa 1122, 109 N.W.2d 432. We must hew to the line and place Todd's interest first, as best we perceive it.

The trial court granted Patricia reasonable visitation rights, but in operation this provision has been insufficiently specific. The trial court also granted her the right to have Todd during the summer vacation months, but this is too disruptive. We therefore modify the modification decree by granting Patricia visitation rights (a) during the first full weekend of each calendar month from 9:00 a. m. on Saturday until 8:00 p. m. on Sunday, provided she informs Dale by Wednesday preceding of her intention to exercise such visitation, and (b) during the first full two weeks of July each year from 9:00 a. m. on Sunday until 8:00 p. m. on the second succeeding Saturday, provided she informs Dale at least a week in advance of her intention to exercise such visitation.

Modified and affirmed.

All Justices concur except HARRIS and McCORMICK, JJ., who concur in result.