**IN THE COURT OF APPEALS OF IOWA**

No. 19-0991
Filed December 18, 2019

**KRISTIN M. POTTER,**
        Plaintiff-Appellee,

**vs.**

**ERIC J. SMITH,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Carla T. Schemmel,
Judge.


        Defendant appeals the district court's order denying his request to modify a
paternity order.  **AFFIRMED.**


        Benjamin Folladori of Marberry Law Firm, P.C., Urbandale, for appellant.

        James R. Hinchliff of Shindler, Anderson, Goplerud & Weese, P.C., West
Des Moines, for appellee.


        Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

Eric Smith (Eric) appeals from the district court order, which modified Eric's visitation and denied Eric's request for an award of physical care after the custodial parent moved to Arizona with the parties' nine-year-old daughter. On review of the entire record, we affirm the district court's ruling.

**I. Facts and Procedural History.**

Kristin Potter (Kristin) and Eric have never been married but are the parents of one child, J.S., born in 2009. On January 19, 2011, a document entitled "Consent Judgment Re: Paternity, Custody, Parenting Time and Child Support" was filed in Maricopa County, Arizona, granting Kristin and Eric joint custody. On November 28, 2011, a second order was entered in Arizona adopting an agreement of the parties that modified the parties' parenting time. While short-lived, the parties reconciled and moved to Colorado. Kristin and Eric then moved to Iowa in 2015.

On June 17, 2016, Kristin filed an application for a civil protection order under Iowa Code chapter 236 (2016). On June 30, 2016, a consent order was entered prohibiting Eric from having any in-person contact with Kristin. The parties were allowed only written communication. On August 3, 2016, Kristin filed a petition to register a foreign judgment in Polk County, Iowa, and on September 19, 2016, Kristin filed a petition in Polk County, Iowa, requesting modification of the Arizona order. During the course of the initial Iowa proceedings, the court appointed Susan Gauger to conduct a child custody evaluation. The evaluation recommended the parties be awarded joint legal custody and Kristin be awarded physical care of J.S.

On April 17, 2017, Kristin and Eric agreed to modify the previous order, with the parties remaining joint legal custodians of J.S. and Kristin being awarded physical care of J.S. Such agreement was approved by the Iowa court. Eric's visitation was set at every other weekend and an overnight every Wednesday. Additionally, for the weeks in which Eric did not have weekend visitation, he was also entitled to an overnight Thursday visit. The terms of the previously entered no-contact order in favor of Kristin were incorporated within that stipulation and modified order.

On March 5, 2018, Kristin provided written notice to Eric of her intent to move back to Arizona. On April 9, 2018, Kristin filed a petition requesting modification of Eric's visitation in anticipation of such move. A child and family reporter was appointed by the court at the request of Kristin, over the objection of Eric. On August 22, 2018, Eric filed an application for an emergency temporary injunction to prohibit Kristin from moving with J.S. to Arizona. Following a hearing, the district court denied and dismissed Eric's application for injunctive relief. Eric then filed a counterclaim requesting he be awarded physical care of J.S. Prior to the final trial, Kristin and J.S. moved to Arizona, where Kristin, her fiancé, and J.S. now reside.

Final trial on Kristin's petition for modification and Eric's counterclaim was held over a two-day period in December 2018. At the time of trial, Kristin was expecting a new baby and employed in Arizona as a nurse with an annual income of $56,000. J.S. was enrolled in school in Arizona. Eric remained in Des Moines, residing with his girlfriend and her two children. He continued to work for a company based out of Chandler, Arizona, earning an annual income of $78,000.

Following the filing of the modified order, Eric filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). Such was denied in its entirety by the district court. His appeal followed.

**II. Scope of Review.**

Our review of this matter is de novo. Iowa R. App. P. 6.907. We give weight to the fact findings of the district court, especially in determining the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). Our overriding consideration is always the children's best interests. Iowa R. App. P. 6.904(3)(o).

**III. Relocation to Arizona.**

The parties' order from the 2016 Iowa modification included the following provisions:

> k: School District: The parties stipulate and agree that it is in the child's best interest to attend the West Des Moines school district through high school.
> l. Moving: If either party intends to relocate more than thirty (30) miles from their present residence, that party will give the other 120 days advanced written notice of their intent to do so.

Eric argued at the injunction hearing that the provision concerning the school district required J.S. to remain in the West Des Moines school district through high school. Kristin argued that because of the moving provision, she was allowed to change the child's residence as the custodial parent, upon notice to Eric. The district court addressed the above at the injunction hearing, finding that the decree did not prevent the move. On appeal, Eric does not challenge the district court's denial of injunctive relief but argues that Kristin's move was purely self-motivated and he is better able to provide for the best interests of the child. We address the issues Eric raises below.

The general principles guiding our adjudication of petitions for modification of dissolution decrees are well established. Appellate courts of this state have long held that the petitioner has a lesser burden to justify a modification of visitation provisions than a modification of custody. *Nicolou v. Clements,* 516 N.W.2d 905, 906 (Iowa Ct. App. 1994). In this case, Kristin need only show there had been a change in circumstances since the most recent order, not a substantial change in circumstances. *See id.* She also bears the burden of showing that the requested change is in the best interests of the child. *In re Marriage of Salmon,* 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). The trial court has reasonable discretion to modify visitation rights and its decision will not be disturbed on appeal unless the record fairly shows that it has failed to do equity. *Norenberg v. Norenberg,* 168 N.W.2d 794, 797 (Iowa 1969); *In re Richardson*, No. 12-1461, 2013 WL 3458166, at *2 (Iowa Ct. App. July 10, 2013).

"To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983). "The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary." *Id.* "They must relate to the welfare of the children." *Id.* "A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well-being." *Id.* These principles clearly place a heavy burden on a parent requesting modification of a custodial provision. The burden is necessarily a heavy one undergirding the

fundamental policy that "once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Id.*

A decision by a joint custodial parent with physical care of children to move out-of-state is the kind of decision the other joint custodian has a right to be consulted about. Geographical proximity is a desirable feature of joint custody because it enhances the opportunity for access between the children and the noncustodial parent. Nevertheless, geographical proximity is not an indispensable component of joint custody, and, at least when the decree is silent on the issue, the parent having physical care of the children must, as between the parties, have the final say concerning where their home will be. This authority is implicit in the right and responsibility to provide the principal home for the children. The right would mean little if the other custodian could veto its exercise. Even with joint custody, therefore, the burden is on the parent challenging removal to establish that the decree should be modified to preclude it. *Id.* at 159–60. And in our "highly mobile society"—a characterization the Iowa Supreme Court used in *Frederici* that is surely no less true today—periodic relocation is hardly a surprise. *Id.* at 160.

However, as set forth by the Iowa Supreme Court in *In re Marriage of Hoffman*, 867 N.W.2d 26, 33 (Iowa 2015), Kristin's authority as the physical care custodian to decide the location of the child's residence is not unlimited. Her decision is subject to judicial review based on well-established principles protecting the best interests of the child.

> In determining whether removal should be prevented, the trial court must consider all of the surrounding circumstances. They include the reason for removal, location, distance, comparative advantages and disadvantages of the new environment, impact on the children,

and impact on the joint custodial and access rights of the other parent.

*Frederici*, 338 N.W.2d at 158. With these principles in mind, we turn to the move from Polk County, Iowa to Arizona.

   A. Kristin's Motive for the Move.

   Eric argues that Kristin's move was motivated solely by her desire to be closer to her new boyfriend even if it meant "destroying the relationship that the child had with Eric in Iowa." The district court found that Kristin's move was motivated by her desire to live in the same state as her fiancé, with whom she is now expecting a new baby, and her employment opportunities. We agree with such assessment of the district court. *See In re Marriage of Behn,* 416 N.W.2d 100, 101 (Iowa Ct. App. 1987) ("We do not find Barbara's moves with her [new] husband justify a change of physical care."); *see also Hollandsworth v. Knyzewski,* 79 S.W.3d 856, 873 (Ark. Ct. App. 2002) ("A rule of law that effectively requires custodial parents to gamble custody of their children before they can live with their children and new spouses . . . seems the very antithesis of domestic stability."); Theresa Glennon, *Still Partners? Examining the Consequences of Post-Dissolution Parenting,* 41 Fam. L.Q. 105, 125–36 (2007) (exploring a multitude of reasons why parents with physical care choose to move).

   We, like the district court, find no credible evidence in the record tending to prove Kristin moved to Arizona to limit Eric's relationship with J.S*. See In re Marriage of Grantham,* 698 N.W.2d 140, 146 (Iowa 2005) (modifying physical care after one parent "maintained a persistent pattern of conduct that . . . served to diminish the children's relationship with their mother"); *In re Marriage of Quirk–*

*Edwards,* 509 N.W.2d 476, 480 (Iowa 1993) (modifying physical care when "the evidence was overwhelming that [one parent] willfully sought to deprive [the other] of . . . visitation"); *In re Marriage of Leyda*, 355 N.W.2d 862, 867 (Iowa 1984) (modifying physical care when one parent's relocation was "motivated in large part by [a] driving need to separate [the child] from her father, emotionally and physically"); *In re Marriage of Downing*, 432 N.W.2d 692, 694–95 (Iowa Ct. App. 1988) (modifying physical care when the moving parent denied visitation, withheld health information, intercepted mail, and even "remov[ed] the telephone from the house when she left the children alone so they would not call their father").

We also look to the efforts of Kristin, described by the trial court as "extraordinary," since the move to foster the relationship between J.S. and her father. These efforts include providing transportation for J.S. to Iowa for Labor Day and fall break at her sole cost, offering Eric the majority of the winter break for J.S., allowing Eric to have time with J.S. when he traveled to Phoenix for work, and making efforts to ensure Eric has the opportunity for daily phone contact with J.S.

While Eric also argues that Kristin has a pattern of moving, creating instability for J.S., we note that the majority of the moves made by Kristin since the birth of J.S. were in Eric's company. Further, while Eric relies heavily on *In re Marriage of Eggeling*, No. 18-0234, 2019 WL 478818, at *4 (Iowa Ct. App. Feb. 6, 2019), we note that the *Eggeling* case is distinguishable because the Eggelings shared joint legal custody and joint physical care at the time of the move, whereas Kristin is the custodial parent in this case.

B. Location, Distance, Disruption, and Impact.

Eric is opposed to the move to Arizona because it interferes with the parenting time he enjoyed with J.S. when she lived in Des Moines. The child's new home separates her from Eric by approximately 1400 miles, making in-person contact between Eric and J.S. significantly more challenging. The Supreme Court has previously found in *Frederici* a 700–mile move was "not alone sufficient to justify shifting physical care to [a] non-moving joint custodian." *Frederici,* 338 N.W.2d at 160. Further, "[p]hysical care issues are not to be resolved upon perceived fairness to the *spouses,* but primarily upon what is best for the *child.*" *In re Marriage of Hansen,* 733 N.W.2d 683, 695 (Iowa 2007).

The district court found that Kristin should remain the physical care provider for J.S., as Kristin has shown that she is willing to foster and support the relationship between J.S. and Eric. Contrastingly, the court found that Eric remains unable to cooperate with Kristin and unable to support the relationship between J.S. and Kristin. Our review of the record supports such finding.

Eric also contends the move has disrupted his daughter's life by distancing J.S. from himself, his girlfriend, and his girlfriend's children. As the Iowa Supreme Court has previously found, "[n]o move is easy, even for adults. Some emotional trauma can be expected whenever children are removed from familiar to unfamiliar surroundings." *Frederici,* 338 N.W.2d at 160. And "just as [the emotional trauma normally attending a move] does not prevent parents from moving generally, it is not alone sufficient to justify shifting physical care to the non-moving joint custodian." *Id.* Although we do not intend to minimize the impact of the move on J.S., we are convinced that notwithstanding the period of adjustment for J.S., the

move will allow her to maintain her close relationship with her primary caretaker and with her father given the visitation provided in the modified order. Kristin has enrolled J.S. in counseling. The counselor reports no concerns with the move. J.S. is also actively involved in her school. J.S. has been able to participate in extracurricular activities in Arizona similar to Iowa and has done well academically, as she did in Iowa.

Our rules governing modification of decrees place "greater importance on the stability of the relationship between [children] and the[ir] primary caregiver [than on] the physical setting of the child[ren]." *In re Marriage of Williams,* 589 N.W.2d 759, 762 (Iowa Ct. App. 1998); *see Hoffman*, 867 N.W.2d at 32–35; *In re Marriage of Whalen,* 569 N.W.2d 626, 630 (Iowa 1997) ("While stability is important in a child's life, stability can be nurtured as much by leaving children with the same custodial parent as leaving them in the same neighborhood.").

Lastly, the order of modification provides Eric with substantial visitation, which allows him to maintain his relationship with his daughter, in spite of the distance.

**IV. Modification of Physical Care Request by Eric.**

As the party seeking modification of a child's physical care, Eric is required to establish, by a preponderance of the evidence, that there has been a substantial change in circumstances since the original decree was entered. *In re Marriage of Thielges,* 623 N.W.2d 232, 235 (Iowa Ct. App. 2000). The change must be more or less permanent and relate to the child's welfare. *In re Marriage of Walton,* 577 N.W.2d 869, 869 (Iowa Ct. App. 1998). Eric must also show that he is the parent

who can more effectively minister to the child's well-being. *Thielges,* 623 N.W.2d at 235.

A. Custody evaluation and child custody investigator.

Eric argues that the district court relied on inappropriate evidence in ordering that physical care remain with Kristin and in denying Eric's request for physical care. This issue was raised in Eric's rule 1.904 motion. The district court rejected this argument:

> The court disagrees with the Respondent's claims. The court found that the Respondent was unable to support the minor child's relationship with her mother, and relied upon the prior custody evaluation report to show a history of doing so in the past. In addition, the court recognized, and hereby specifically states, that the Petitioner's moving out of state while having custody of the minor child was a sufficient change of circumstances to reconsider custody. Finally, the facts and legal conclusions set out by the court in its ruling fully support the court's conclusion that it is in the minor child's best interest to remain in the physical custody of her mother.

We do not find that the district court inappropriately relied on the custody evaluation completed in 2016. The district court did make reference to such as a historical marker of Eric's behavior toward Kristin. We further note that despite Eric's argument, it was Eric, not Kristin, who offered the 2016 custody evaluation referenced by the court as an exhibit. A separate evaluation that also recommended that physical care remain with Kristin was completed in the instant action and referenced by the trial court.

B. Merits.

The trial court set forth the factors for consideration in making a custodial determination delineated in Iowa Code section 598.41(3) (2018), as referenced in section 600B.40(2). The Court had the opportunity to observe both parents at trial.

It is well-settled that "[b]ecause [the] trial court was present to listen and observe the witnesses, we give weight to its findings." *In re Marriage of Zabecki,* 389 N.W.2d 396, 398 (Iowa 1986).

A trial court deciding family law cases is greatly helped in making a wise decision about the parties by listening to them and watching them in person. In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented. *Hoffman*, 867 N.W.2d at 38.

The trial court applied the correct factors in determining the best interests of the child after an opportunity to gauge credibility. After full review of the record, we also agree with the district court's assessment that Eric is unable to support the minor child's relationship with her mother. While the move from Iowa to Arizona was sufficient to consider a change of physical care, Eric has not met his burden for such change in physical care by demonstrating that he is the parent who can more effectively minister to the child's well-being.

## V. Award of Appellate Attorney Fees.

Both parties request that this court award appellate attorney fees. Such an award "is discretionary and acknowledges the parties' financial positions." *In re Marriage of Gaer,* 476 N.W.2d 324, 330 (Iowa 1991). In paternity proceedings, the district court "may award the prevailing party reasonable attorney fees." Iowa Code § 600B.26. That provision also gives us discretion to award appellate attorney fees. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013).

We consider the parties' respective abilities to pay, whether a party resisting the modification petition was successful, and whether a party has been obliged to

defend the district court's decision on appeal. *Id.* After considering these factors, we conclude Kristin and Eric should pay their own appellate attorney fees. We recognize the merit to Kristin's position on the physical-care issue, but we do not find Eric in a superior financial position to pay for her representation. We assess appellate costs to Eric.

**AFFIRMED.**