Anita Jean SMITH, Appellee,

v.

David HOLT and Alberta Holt, Appellants,

and

Joe B. Smith, Jr., and Mabel L. Smith, Appellees.

No. 2–56996.

Supreme Court of Iowa.

Feb. 19, 1975.
Rehearing Denied March 14, 1975.

William J. Koehn, of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellants.

Virgil Moore, Des Moines, for appellees Joe B. Smith, Jr. and Mabel L. Smith.

Heard by MOORE, C. J., and RAWLINGS, UHLENHOPP, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

The question in this child custody appeal is whether Anita Jean Smith should be in the custody of her paternal grandparents or her maternal grandmother and step-grandfather. The trial court awarded her custody to the paternal grandparents. We reverse because we believe the record shows the other grandparents can minister more effectively to her long-range best interest.

Anita is nine. She was born January 22, 1966. Her parents Jerry Lee Smith and Verjean Evans Smith were married a few hours before Anita was born. Jerry was then 21; Verjean was 16.

Jerry and Verjean separated in January 1969 and were divorced in 1970. Verjean received Anita's custody. Later the parents each entered new marriages which ended in divorce. Verjean received custody of a daughter from her second marriage. On October 13, 1973, Verjean and that daughter died as the result of a fire in their home in Des Moines. Anita was out of the home at the time, spending the night with defendants Alberta and David Holt, her maternal grandmother and step-grandfather ("the Holts").

This case started as a habeas corpus action by Jerry to obtain custody of Anita from the Holts. Jerry's parents, Joe B. and Mabel L. Smith ("the Smiths"), intervened in Jerry's behalf. They asked for custody of Anita if Jerry did not receive it.

The case was tried and decided in November 1973. The trial court found that Jerry should not have Anita's custody. Noting difficulty in choosing between the two sets of grandparents, the court decided in favor of the Smiths. The Holts were given visitation rights with Anita. Jerry was ordered to pay child support to his parents. The Holts appealed, but Jerry did not.

We recently enumerated factors to be considered in deciding competing custodial claims. In re Marriage of Winter, 223 N.W.2d 165, 166–167 (Iowa 1974). Although those factors were listed in the context of a parental custody dispute, they are also applicable when the competing parties are grandparents.

Upon our de novo review we must decide what custodial award will best serve Anita's long-range interest in light of those factors under the record in this case.

The record shows that this custody dispute is the latest in a series of traumatic events experienced by Anita during her young life. Her parents' marriage was rocky and unstable from the beginning. They had frequent disagreements. Also, Jerry did not get along with Verjean's father Ed Evans or the Holts. After a short time he ordered Verjean not to see them any more.

For about a month after the marriage, Jerry, Verjean and Anita lived with the elder Smiths. A disagreement occurred, and Jerry's parents asked them to leave. Jerry and Verjean moved to an apartment, leaving Anita with Jerry's parents. Anita lived with them until her parents separated in January 1969. During the three years

they were together neither Jerry nor Verjean accepted parental responsibilities. Verjean took Anita when the parties separated.

For a few weeks after the separation Verjean and Anita lived with Ed Evans. Then they moved in with the Holts for several months while Verjean took some courses to obtain a high school equivalency certificate. In June 1969 Verjean and Anita moved to Florida. They stayed there about 16 months. It was there that Verjean entered her second marriage. When it foundered she returned to Iowa. She and Anita stayed with the Holts for a couple of weeks until she found an apartment. From October 1970 until March 1972 Verjean maintained a home for Anita and her second daughter, after her birth.

Verjean took some business courses and held occasional jobs. She suffered from depression. She and her daughters vacationed in Florida for about six weeks in the summer of 1971. Upon her return she continued in about the same pattern of activity as before. Both the Smiths and Holts saw Anita about twice a week.

In March 1972 Verjean entered a hospital in Des Moines after a drug overdose and received treatment for emotional problems. She remained there about four months. During that period the Smiths took care of Anita. Although she was in kindergarten they held her out of school and kept her under constant watch for fear the Holts or someone else would seek to gain possession of her. There is no evidence of any basis for this apprehension. About this time the Smiths considered filing or filed an application in Jerry's name to have Anita's custody shifted to him. They later abandoned this course of action upon advice of counsel. The Smiths relinquished Anita to Verjean when she was discharged from the hospital.

Verjean did well during the 18 months prior to her death. She finished her education for secretarial work, worked steadily as a secretary, cared for her children, and seemed to be making an excellent adjustment. During that period she and the children frequently visited the Holts, and she permitted the Smiths to exercise visitation with Anita.

As would be expected these experiences left their mark on Anita. In early 1973 Verjean observed Anita was depressed. School authorities reported she was having trouble getting along with the other children and became upset and easily discouraged in schoolwork. Verjean believed the Smiths were too permissive with Anita and were undermining her relationship with her. In about March 1973 Verjean sought assistance from the Des Moines Child Guidance Center, a private agency which, among other services, provides specialized professional treatment for children with emotional problems.

Anita was found to be in need of treatment. In addition to emotional distress she suffered from a peptic ulcer which was deemed to be psychophysiological in origin. Her treatment started in July 1973. By the time of Verjean's death, she and Anita were getting along quite well, and Anita was overcoming her problems.

After Verjean's death, the Child Guidance Center was asked by the court to assist in resolving the custody problem. An evaluation of Anita was obtained. The Holts were examined and evaluated. The Smiths declined to see the agency on advice of counsel.

The evaluation of Anita included a detailed discussion of her characteristics and needs. See In re Marriage of Winter, supra, at 166. She was described by the treating social worker as a bright and attractive child, then seven years old. The social worker noted she was also an anxious, needy and depressed child, who had long been a subject of dispute among the adults in her life. He asserted she had adopted a manipulative and demanding quality in her relationship with adults, consistently raising the question by her behavior of who would parent her. He said that after her mother's death this became an obsession with Anita, who feared she would

have to make the decision, did not want to do so, and feared rejection by the adults she would not select.

The social worker concluded Anita needs a set of parenting persons with clearly defined authority and responsibility who would respond to her in a caring and supportive manner without treating her as overly-fragile and delicate and without babying her. He said they should set constructive expectations and limits on her behavior appropriate to her age, be comfortable in saying "no" to her, and offer her a warm, secure home. He emphasized the need for long-term firm and understanding parental guidance.

The record includes evidence showing the characteristics of those competing for Anita's custody, their capacities to provide for her needs, and the environments they would offer.

■ We include Anita's father in that group for several reasons. He is her surviving parent, he sought her custody in the trial court, he came from the home in which the trial court placed her, and he is a member of that household.

Jerry manifested no real interest in Anita either during or after his marriage to Verjean. He entered the marriage reluctantly, contending he waited until Verjean was about to deliver Anita because he was not ready before then to admit paternity. He had used a similar rationale in entering an earlier marriage which was annulled.

Jerry never accepted his parental responsibilities. There is also considerable evidence he has not accepted adult responsibilities. He was 29 at the time of trial. He had been through three marriages and was then single and living with his parents. Although he holds a college degree and a teaching certificate, he did not use his education. He was employed as a watchman in the Des Moines street department where his principal duties involved taking out barricades and cleaning blinker lights. In addition, for about three years he had been engaged in another business, the publication and sale of a "swinger" magazine, which the trial court described as pornographic. The magazine is a forum for advertisements by persons who invite others to participate in various sex acts. Many of the advertisements are accompanied by explicit explanatory photographs. Jerry described his business as "very adult" and asserted it had nothing to do with his home life but is "just something to make money".

Jerry is an alcoholic, and there was evidence he has not conquered that problem.

In its decree the trial court said Jerry would be a completely undesirable custodian. The court noted his past disinterest in Anita, his instability, irresponsibility, immaturity and immorality. After detailing his unfitness, the court said, "It is the purpose and intent of the court * * * to make it as clear as humanly possible that * * * the natural father is not the proper person to have the custodial care of [Anita]." We agree with the trial court's conclusions regarding Jerry.

■ The paternal grandfather, Joe B. Smith, Jr., was 50 at the time of trial. His health is good, and he has been steadily employed as a factory worker. He is an avid gardener. His wife Mabel was 47 at the time of trial. Her health is good, and she also enjoys working in and around the home. The Smiths live in a comfortable home on a large lot outside the Des Moines city limits near an elementary school. Jerry is their only child.

The Smiths appear to be good people who desire what is best for Anita and sincerely believe they can provide it. They have done much for her. However, they have also been somewhat overprotective and permissive. They showed poor judgment in keeping her out of kindergarten for several months. In addition, they purport to disapprove Jerry's activities while at the same time permitting him to reside in their home and advocating his custody of Anita. They contend she would be unaffected by his character flaws because his outside activities would be kept secret from her.

We do not think a man's character may be so conveniently compartmentalized, nor do we believe a child who has suffered so much should also be a victim of hypocrisy. All of the reasons given by the trial court for denying Anita's custody to Jerry must be considered in deciding whether she should live in the Smith home with him. Jerry's influence would pervade the home, and we do not believe it would be a good influence.

The alternative is the Holt home. The maternal step-grandfather, David Holt, was 42 at the time of trial. His health is good, and he is the owner of a successful camper sales business in Des Moines. He enjoys camping and maintains a campground in conjunction with his business. Alberta Holt was 45 at the time of trial. Her health is good, and she has done bookkeeping and other work in her husband's business during their marriage. The Holts are remarkably young and active grandparents. They were married in 1960 and together cared for Alberta's three children from her marriage to Ed Evans until they left home. The Holts have a comfortable home in Des Moines, comparable in most respects to that of the Smiths.

The Child Guidance Center psychologist who examined the Holts summarized their characteristics and parenting capabilities as follows:

" * * * I would view Mr. & Mrs. Holt as being very capable parents of a seven year old girl. Mrs. Holt is capable of providing the [nurture] warmth, and care such a child would need, and at the same time can provide limits and controls. Mr. Holt is motivated to be a good provider, and has the capability of making demands, and of setting limits and controls. They both are sensitive to ethical and moral issues, and would be concerned with seeing that a child develops properly in this area. There are differences in personality in this couple that may make for some conflict at times, but they have the strength, skill and motivation to work their problems out. I do not view these people as being 'perfect' parents, but as being people who can handle the 'give and take' of life quite well, and would probably provide an atmosphere in which a child could learn that one can be accepted and valued in spite of imperfections and limitations."

The trial court preferred the Smiths to the Holts because the Holts had each previously been married, because they would have to adjust their work and vacation habits to make a home for Anita, and because visitation by Jerry would be more difficult if they were awarded her custody. We believe any risk indicated by these factors is outweighed by the disadvantages of placing Anita with the Smiths. The Holt marriage has lasted for 15 years and appears stable. They are willing and have planned to adjust their work and vacation habits to provide a home for Anita. The record also shows they would cooperate in implementing court-ordered visitation.

In addition, from the evaluation by the Child Guidance Center it appears Anita needs firmness and discipline as well as love. These are qualities the agency found in the Holts which we do not believe the Smiths possess to the same degree.

The Holts have had considerable contact with Anita since she was three years old. They offer a wholesome, loving home in which she would receive the parental guidance she has missed for much of her lifetime.

Considering the factors delineated in the Winter case, we conclude Anita's long-range best interest will be better served if her custody is awarded to the Holts. See In re Marriage of Winter, supra.

The case is accordingly reversed and remanded. Upon remand the trial court shall amend its decree to make appropriate provision for visitation rights with Anita by the paternal grandparents and father. Child support from Jerry Lee Smith shall be directed to the Holts.

Reversed and remanded.