Anita Jean SMITH, Appellee,

v.

David HOLT and Alberta Holt, Appellees,

and

Joe B. Smith, Jr. and Mabel L. Smith, Appellants.

No. 2–58608.

Supreme Court of Iowa.

April 14, 1976.

Ed Skinner, Irish, Skinner & Weislander, Altoona, for appellants.

William J. Koehn and Robert F. Holz, Jr., Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellees.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and REYNOLDSON, JJ.

REYNOLDSON, Justice.

This appeal is a sequel to our prior decision in the same habeas corpus proceeding adjudicating custody of a seven-year-old child, Anita Smith. See *Smith v. Holt*, 225 N.W.2d 906 (Iowa 1975).

The basic facts and our reasons on that appeal for reversing trial court's award of custody to the paternal grandparents (Smiths) and awarding custody to the maternal grandmother and step-grandfather (Holts) are fully set out in the above opinion, filed February 19, 1975. We denied petition for rehearing March 14, 1975 and issued *procedendo* March 17, 1975.

April 16, 1975, trial court entered a supplemental order in conformance with our directions to formulate provisions for visitation by the Smiths and the father, Jerry Smith, and for child support to be paid by the latter. On the same day, Smiths filed in this habeas corpus proceeding an application to re-establish custody in them, alleging changes in circumstances subsequent to November 30, 1973, the date of the decree we reversed.

The physical change of custody of Anita to the Holts was not effected until April 18, 1975. Hearing on the application to modify was had June 24 and 25, 1975, resulting in a July 7, 1975 ruling denying a change of custody back to the Smiths. We affirm.

■ I. The Smiths contend trial court erred because in some manner it considered changes in circumstances only from the date of our February 19, 1975 opinion rather than from November 30, 1973.

This attack may have been invited by the Holts, who apparently asserted below the only relevant changes were those occurring after the April 16, 1975 supplemental order following reversal and remand. That rationale was rejected by trial court and was not pursued here.

It is also evident trial court rightly considered all changes in circumstances occurring after November 30, 1973. See *Oliver v. Oliver*, 216 Iowa 57, 60, 248 N.W. 233, 235 (1933). The decree as of that date was based upon the evidence then existing as shown by the record. Our decision reversing and remanding that decree was based on the same record. However, trial court properly assumed that in so ruling we took into consideration Anita had probably resided in the Smith home during pendency of the appeal. See *Raabe v. Raabe*, 191 N.W.2d 551, 553 (Iowa 1971).

It is unfortunate that appeal took so long. But it was not the fault of the Holts. Cf. *Stouwie v. Stouwie*, 222 N.W.2d 435, 438–439 (Iowa 1974); *Eddards v. Suhr*, 193 N.W.2d 113, 117 (Iowa 1971). The remedial measures invoked by this court to avoid these situations came too late for the first appeal. Rule 344.3, Rules of Civil Procedure.

We find no merit in this proposition relied on for reversal.

■ II. Other propositions Smiths rely on relate to the alleged failure of trial court to consider the best interest of the child, rule 344(f)(15), R.C.P., including Anita's claimed preference for the Smith home and the fact she did so well there during the prior appeal.

Our rules on review of a modification hearing need not be repeated here. See *Page v. Page*, 219 N.W.2d 556, 557 (Iowa 1974); *In re Marriage of Link*, 205 N.W.2d 751, 752 (Iowa 1973).

It is true Anita, age nine at the date of the modification hearing, made fine progress and was apparently well-adjusted in grade school while residing with the Smiths. This is wholly consistent with the 1975 appeal finding she was a bright and attractive child. *Smith*, supra, 225 N.W.2d at 908. It is also apparent she was for several weeks somewhat emotionally upset following transfer of custody from Smiths to Holts. This was an understandable reaction. However, her excellent grades were not affected and the record further reflects her rapid adjustment to the Holt home.

In our prior decision we said trial court was right in holding Jerry, the father, was a completely undesirable candidate for Anita's custody. We had reservations concerning the Smith home because of his influence there. We also questioned the secretiveness of the Smiths and their judgment in some decisions relating to Anita. The subsequent record tends to confirm our concerns.

When the Smiths had custody pending the prior appeal, Anita was hospitalized and underwent surgery for appendicitis. Neither of the Smiths bothered to inform the Holts. Mrs. Smith testified, "Unfortunately, Mrs. Holt had a friend that had a child in the hospital at the same time and her friend told her and she did come up and my husband stepped out of the room so she could see her."

This attitude is in stark contrast to that of the Holts. Following transfer of custody they daily drove approximately 88 miles to allow Anita to complete the 1975 school year at Delaware elementary school, even though the Smith home was across the street. During the time Anita was going through the custody transition, Holts provided her visitation with the Smiths beyond the generous visitation required by the supplemental order. Mrs. Holt, testifying to a conversation with Anita regarding these extra visitations, testified she told her granddaughter, "Anita, you would be a very funny little girl if you didn't love your Grandma and Grandpa Smith, because they love you very much."

During the time Anita was with the Smiths, they commendably placed her social security and child support payments in a savings account for her future use. But there is an indication too much may have been made of this. Her teacher testified Anita told her, "I want to live with my

Grandma and Grandpa Smith. They love me for real love. They don't love me for money. I know they love me." There is no hint in this record the Holts' interest in Anita centered on her social security or child support payments. Their sizable annual income negates the necessity of any reliance on her income. We regret a small child should be weighing grandparental love on money scales, and conclude such thought processes were not self-initiated.

 Fortunately, in a different respect the good judgment of grandparents and counsel was demonstrated when Anita was not forced to testify concerning her preference among her grandparents. Had she expressed a preference it would have been entitled to little weight. *In re Marriage of Bowen*, 219 N.W.2d 683, 689 (Iowa 1974); *Leo v. Leo*, 213 N.W.2d 495, 497 (Iowa 1973); *Smith v. Smith*, 257 Iowa 584, 591, 133 N.W.2d 677, 681 (1965).

The modification hearing record reflects Jerry still exercises an influence in the Smith home. Although he moved from the home not long after the November 30, 1973 decree, he continued to be a frequent visitor, often accompanied by young female companions. He continued publication of his "swinger" magazine at least until indicted by a federal grand jury early in 1975, where the matter stood at time of the modification hearing.

Mr. Smith's assessment of his son's activities, while understandable, was defensive: "I think he's got into a business he shouldn't have. It's unacceptable for Iowa. If he had been in New York, they would have said he was a good business man." Mr. Smith had some realization Anita should be shielded from direct exposure to her father's activities, but no plan how this could be accomplished as she grew into womanhood. There is a clear inference when Jerry was around Mr. Smith abandoned his parenting role entirely. Referring to taking Anita fishing, he testified, "There is only room for one dad in there and I kind of step back on that, if he can handle it, if he is there, and he's free that day, they go."

Although the district court supplemental order of April 16, 1975 provided Jerry should have visitation rights "only while he is in the company of at least one of his own parents" there is further indication in the record the Smiths neither believed in the necessity of this provision nor cooperated at all times in its enforcement.

Anita has now been with the Holts eleven months. She is in a good home, in care of parenting adults having those necessary characteristics described in our prior opinion. She is making rapid adjustments, taking part in all those activities of interest to a young girl, including caring for her own horse. It is obvious Anita has enough love to divide among all four of her good and concerned grandparents. Her long-range best interest requires a selfless sharing of that love by those adults.

The decision below is affirmed.

AFFIRMED.