**STATE of Iowa ex rel. Joshua Thomas BAUMGARTNER, A Minor Child, Appellant,**

v.

**Roy Leonard WILCOX, Jr., Appellee.**

No. 94–565.

Supreme Court of Iowa.

May 24, 1995.

Thomas J. Miller, Atty. Gen., and Michael J. Parker, Asst. Atty. Gen., for appellant.

Roy Leonard Wilcox, Jr., Milton, pro se.

Rick L. Lynch, Bloomfield, guardian ad litem, for minor child.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN and TERNUS, JJ.

McGIVERIN, Chief Justice.

Roy Leonard Wilcox, Jr. filed an application with the district court seeking to overcome a prior adjudication of paternity and to be relieved of the consequent court-ordered obligations to pay past and future child support for the minor child, Joshua Thomas Baumgartner. In his application, Wilcox claimed he was not the child's father. Subsequent blood and genetic tests confirmed Wilcox's claim, and the district court entered an order relieving him of all past and future support obligations on behalf of Joshua. The district court also assessed costs, except the guardian ad litem fee, to the State. Because case law and statutory law support neither the court's grant of relief from past support obligations to Wilcox nor its assessment of costs to the State, we affirm in part and reverse in part, and remand for entry of a district court order in conformance with this opinion.

I. *Background facts and proceedings.* In our de novo review of this equity proceeding, we find the following facts. *See* Iowa Code § 252A.6 (1993); *State ex rel. Reaves v. Kappmeyer,* 514 N.W.2d 101, 102 (Iowa 1994) (citing Iowa R.App.P. 4).

On February 10, 1992, the State filed a petition under Iowa Code chapter 252A to establish paternity, and current and accrued support for the minor child, Joshua Thomas Baumgartner. *See* Iowa Code §§ 252A.5(5) & 252A.6. In the petition, the State requested the court to establish Roy Leonard Wilcox, Jr. as the father of Joshua, and to require Wilcox to pay accrued and accruing child support and to provide medical support for Joshua. Notice of the State's action was served by substitute service upon Wilcox's roommate. *See* Iowa R.Civ.P. 56.1(a). Wilcox was not married to the mother of the child. Public assistance was being expended for support of the child.

Wilcox failed to make an appearance or file an answer to the petition. On April 22, 1992, the court entered a default judgment, as amended, establishing Wilcox's paternity of Joshua and ordering him to pay $158 per month for future child support and $2,212 for accrued child support payable at $15 per

month, and to provide medical support for Joshua. *See* Iowa Code chs. 252A & 252E.

Over a year later in May 1993, Wilcox filed an application to set aside the judgment of paternity. Wilcox asserted that he was not the father of Joshua and requested that the court order DNA (Deoxyribo Nucleic Acid) and other blood testing.

■ After a hearing, the court ruled that any motion to set aside the default order pursuant to Iowa Rules of Civil Procedure 236 or 252(e) was untimely.[1] However, the court treated Wilcox's application as an application to overcome paternity under Iowa Code section 600B.41(7) (1993).[2] Pursuant to that section, the court ordered blood or genetic testing of Wilcox, the mother, and the child, suspended execution on the default order pending the outcome of those tests, and appointed a guardian ad litem for the child.

The tests were subsequently performed and, at a March 1994 hearing, the results were admitted into evidence. The tests revealed that Wilcox could not be Joshua's biological father, and all parties agreed and the court found that Wilcox was not the father of Joshua. Based on this finding, the district court, invoking its equitable powers, subsequently entered judgment on March 4, 1994, relieving Wilcox of all past and future support obligations on behalf of Joshua. The court then assessed the costs of the action to the State, except that it assessed the guardian ad litem fee to Wilcox.

The State appealed, arguing that the district court had no authority to relieve Wilcox

of past support obligations and that it erred in assessing certain costs to the State. The State agrees, however, that the district court properly relieved Wilcox of all future support obligations relating to Joshua.

II. *Relief from child support obligations.* Upon concluding that Wilcox had overcome the establishment of paternity that had been established by prior court order, *see* Iowa Code section 600B.41(7)(a) (1993), the district court ordered relief for Wilcox from any payments of child support, past and future, on behalf of Joshua. The State argues that in ordering such blanket relief the district court erred. Specifically, the State argues that under section 600B.41(7) an "established" father may overcome the adjudication of paternity and thus be relieved of *future* support obligations but not of *past* support obligations. Because our case law and recent statutory law do not provide the courts with the authority to relieve an "established" father of past support obligations, we agree with the State.

A. *History of courts' authority to grant relief from child support obligations.* In prior cases, this court has consistently held that the courts do not have the authority under the common law to reduce court-determined support payments retroactively. *See, e.g., In re Marriage of Shepherd,* 429 N.W.2d 145, 146–47 (Iowa 1988); *In re Evans,* 267 N.W.2d 48, 51–52 (Iowa 1978) (citing *Pucci v. Pucci,* 259 Iowa 427, 431–32, 143 N.W.2d 353, 356–57 (1966); *Welch v. Welch,* 256 Iowa 1020, 1027–28, 129 N.W.2d 642, 646 (1964);

---

1. The district court's conclusion that Wilcox's application was filed too late to be considered a motion under Iowa Rules of Civil Procedure 236 or 252(e) is not challenged on appeal. In any event, we agree with the district court's conclusion. A motion pursuant to rule 236 to set aside a default based upon mistake, inadvertence, surprise, excusable neglect or unavoidable casualty must have been filed not more than sixty days after entry of the judgment. Similarly, a motion pursuant to rule 252(e) to correct, vacate or modify a final judgment or order on the basis of unavoidable casualty or misfortune preventing the party from prosecuting or defending must have been filed within one year after the rendition of the judgment or order involved. Wilcox filed his application on May 12, 1993, over a year after the court had entered its order on April 22, 1992; thus Wilcox's application was barred un-

der both rules. *See State ex rel. Hunter v. Hunter,* 501 N.W.2d 533, 535 (Iowa 1993). Further, we agree with the district court that Wilcox's application was timely under Iowa Code section 600B.41(7)(a)(4) (Supp.1993), which required an action to overcome paternity to be filed no later than three years after the establishment of paternity.

2. The Iowa legislature repealed Iowa Code section 600B.41(7) (1993) by 1994 Iowa Acts chapter 1171, section 46 after the district court entered judgment in this case. The legislature then enacted a new section concerning actions to overcome paternity by 1994 Iowa Acts chapter 1171, section 48. This new section took effect on May 11, 1994 and is now codified at Iowa Code section 600B.41A (1995).

*Delbridge v. Sears,* 179 Iowa 526, 536, 160 N.W. 218, 222 (1916)). The basis for this long-standing rule is that where the rights of the parties have been established, support payments which have accrued are vested and the courts, without statutory authority, cannot take them away. *See, e.g., Shepherd,* 429 N.W.2d at 146; *Delbridge,* 179 Iowa at 530–31, 160 N.W. at 220. The rule also reflects the policy of protecting the stability and integrity of court judgments. *Shepherd,* 429 N.W.2d at 147.

Recent statutes enacted by the Iowa legislature have somewhat modified this common law rule against retroactive relief and have authorized the court to grant retroactive relief from support payments in certain circumstances. *See State ex rel. Hunter v. Hunter,* 501 N.W.2d 533, 536 (Iowa 1993). For example, the legislature gave the court the authority to grant retroactive relief to obligors from child support obligations in cases where technological developments have showed an obligor is not the biological father of the minor child. Iowa Code § 598.21(8)(k) (1993).[3] However, the statute did not provide for full relief from accrued support obligations. The legislature only gave the courts the authority to modify child support obligations back to the date the notice of the pending petition for modification had been served on the opposing party. *Id.* § 598.21(8)(k)(2), 598.21(8)(*l* ).

B. *Courts' authority to grant relief from child support obligations at time of present case.* Another legislative enactment relating to retroactive relief, Iowa Code section 600B.41(7) (1993), was in effect when Wilcox's application was before the district court. That statute also allowed an "established" father to "overcome" a prior paternity judgment if seven conditions listed in the statute, including blood or genetic tests showing the "established" father was not the biological father, were met. The statute further provided in subsection c that:

> If the court finds that the establishment of paternity is overcome, in accordance with all of the conditions prescribed, the established father is relieved of all *future*

support obligations owed on behalf of the child.

*Id.* § 600B.41(7)(c) (emphasis added).

The district court treated Wilcox's application as an application under section 600B.41(7) to overcome the court's prior establishment of his paternity of Joshua. After blood or genetic tests revealed that Wilcox could not be the biological father of Joshua and the parties agreed to the same, the court concluded that Wilcox had met his burden of proof under section 600B.41(7) and thus had overcome the prior establishment of his paternity of Joshua.

The district court then turned to the provision in subsection c of section 600B.41(7) providing for relief from support payments to the formerly "established" father. In interpreting this subsection, the district court stated:

> [A]lthough [section] 600B.41(7) [1993] does not specifically give the court authority to vacate past support, it does not indicate that the court cannot do that; and the court is invoking its equitable powers in this matter to vacate all past support orders in this matter.

Based on this analysis, the district court then relieved Wilcox of all support payments on behalf of Joshua, past and future.

■ Although we agree with the district court's conclusion that Wilcox met his burden under section 600B.41(7) of overcoming the court's prior establishment of his paternity, we disagree with the court's decision to relieve Wilcox from paying all support. Neither the court's equitable powers nor Iowa Code section 600B.41(7)(c) authorized the district court's decision to cancel Wilcox's accrued child support obligations.

As described above, the common law rule prohibited courts from granting retroactive relief from child support obligations. In light of this common law rule, the district court had no basis to invoke equitable powers to relieve Wilcox of his court-ordered obligation to make payments for past support.

---

3. The Iowa legislature repealed Iowa Code section 598.21(8)(k) (1993) by 1994 Iowa Acts chapter 1171, section 41.

Also, Iowa Code section 600B.41(7)(c), relied upon by the district court, does not support its ruling. The clear language of section 600B.41(7)(c), read against the backdrop of recent legislative enactments providing the courts with only limited authority to grant retroactive relief, leads us to conclude that the legislative intent to provide relief under section 600B.41(7)(c) did not include an intention to provide absolute or full relief. Rather, by specifically providing relief from "future support" and failing to mention "past support" in the statute, we believe that the legislature intended that once the "established" father from the prior court order, like Wilcox, had "overcome" or caused the setting aside of the prior paternity judgment, the "established" father was only relieved of providing future support; he still had to pay the past support that had accrued. By its own terms, former section 600B.41(7)(c) did not give the courts the authority to divest the parties of rights accrued under the original judgment establishing support obligations. It simply authorized the courts, when the conditions of the statute had been met, to designate the respective rights and obligations of the parties for the future.

Besides section 600B.41(7)(c)'s own language, further, even though later, evidence of such legislative intent is in the repeal of that section and in the enactment of Iowa Code section 600B.41A (1995)[4], effective July 1, 1994. Section 600B.41A(4) states:

If the court finds that the establishment of paternity is overcome, in accordance with all of the conditions prescribed, the established father is relieved of all future support obligations owed on behalf of the child.

*a.* The effective date of termination of any future support obligation is the date on which an order determining that the established father is not the biological father is filed with the court.

*b. Any periodic support payment, due prior to the date the order determining that the established father is not the bio-*

*logical father is filed, is unaffected by this action and remains a judgment subject to enforcement.*

(Emphasis added.)

Section 600B.41A(4) was not in effect at times material to the present case, but the statute shows a continued legislative effort to clarify the limitations on the courts' authority to grant retroactive relief from support obligations and to preserve judgments for past accrued or "vested" support.

We recognize that our interpretation of section 600B.41(7)(c) (1993) under the circumstances of this case may seem unfair and that such an interpretation may have been what prompted the district court's invocation of "equitable" powers, but the language of the statute and the development of the law in this area command such a result. In this area, the courts only have the authority which the legislature has given them and the legislature did not give the courts the authority to relieve a previously "established" father from payments of accrued support under former Iowa Code section 600B.41(7).

In any event, Wilcox himself is responsible for having to make the accrued support payments on behalf of Joshua. As we recently stated, as adapted, in addressing a similar situation:

If [Wilcox] had appeared at the paternity and child support hearing in [1992] and denied paternity, the issue would have been addressed and resolved at that time. Likewise, had he taken timely action to set aside or vacate the default judgment, the court would have jurisdiction to grant the relief requested. If [Wilcox] had timely raised the paternity issue, he would not face the consequences of the default judgment.

*Hunter,* 501 N.W.2d at 536.

■ III. *Assessment of costs.* Besides lacking authority to grant Wilcox relief from his obligation to make payments for past accrued support on behalf of Joshua, the

---

4. The Iowa legislature repealed Iowa Code section 600B.41(7) (1993) by 1994 Iowa Acts chapter 1171, section 46 after the district court entered judgment in this case. The legislature then enacted a new section concerning actions to overcome paternity by 1994 Iowa Acts chapter 1171, section 48. This new section took effect on May 11, 1994 and is now codified at Iowa Code section 600B.41A (1995).

district court also lacked authority to assess certain costs of the action to the State. Iowa Code section 600B.41(7)(d) (1993), effective at the time the district court taxed costs in this matter, stated: "The costs of testing, the fee of the guardian ad litem, and all court costs shall be paid by the person bringing the action to overcome paternity."

The district court taxed the guardian ad litem fee to Wilcox but taxed all other costs to the State. Based on section 600B.41(7)(d), however, the only authority the district court had was to assess all costs of the action, including the guardian ad litem fee, to Wilcox. By failing to make such a total assessment of costs to Wilcox, the district court erred.

IV. *Disposition.* Based on the foregoing authority, we conclude that the district court correctly determined that Wilcox overcame the prior establishment of his paternity of Joshua and correctly relieved Wilcox of all future support payments on behalf of Joshua. We therefore affirm these portions of the district court's order. We also agree with and thus affirm the district court's assessment of the guardian ad litem fee to Wilcox.

However, due to the lack of authority for its other conclusions, we reverse the district court's grant of relief to Wilcox of all past support payments on behalf of Joshua accrued prior to the court's March 4, 1994 judgment, *see Shepherd,* 429 N.W.2d at 147, and its assessment of all other costs of the action to the State. We remand for entry of a district court order in conformance with this opinion.

Costs on appeal shall be taxed to Wilcox.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**